[No. 25536. Department One. October 31, 1935.]

H. E. Foster, *Appellant*, v. J. W. Bullock *et al.,*
*Respondents.*[1]

*H. E. Foster* and *Carl J. Smith,* for appellant.

*Poe, Falknor, Falknor & Emory, Warren G. Magnuson,* and *Edwin C. Ewing,* for respondents.

Geraghty, J.—In this action, the plaintiff sought
to restrain the defendants from trespassing upon
what he alleged to be a private roadway upon his
premises, and asked damages resulting from work
done upon the roadway by the defendant county and
its officers.

In his complaint, the plaintiff alleged that he had
constructed a private driveway leading from a county
highway to his residence; that, in his absence, the
defendants Bullock and Crandall confederated with
the defendant Renig, road supervisor of the northern
commissioner's district of King county, of which district the defendant John C. Stevenson was commissioner, and that Renig, at the request of Bullock and
Crandall, and in furtherance of the conspiracy, un-

[1]Reported in 50 P. (2d) 892.

lawfully entered upon his private driveway, graveled and constructed a roadway thereon for the benefit of Crandall and Bullock and without authority from him; that the work was done by Renig as road supervisor, with machinery and equipment belonging to King county, and that the work done damaged his property in the sum of one thousand dollars.

The defendants Bullock and Crandall, in their answer, after the denial of the material averments of the complaint, alleged as an affirmative defense that the only work the defendant King county or its officers did upon the described premises was upon a public road, and that the work was done at the instance, and under the direction, of the road supervisor; that the road upon which work was done is a public highway and has been open to the public continuously as such for a period of approximately thirty years, and that the road has been established by reason of its use by the public; that the work done did not, in any way, change its location; that there has been a fence on each side of the road for approximately the same period of time that it has been used by the public, and that it constitutes the only means of ingress to and egress from certain improvements on the property of the defendant Bullock. The answer of King county and the defendants Renig and Stevenson was, in effect, a general denial. After trial to the court, judgment was entered dismissing the action. Plaintiff appeals.

The roadway involved, claimed by appellant to be his private driveway and by the respondent Bullock (who shall hereafter be referred to as if sole respondent) to be a public highway, lies between their adjoining farms and extends south from a public highway for several hundred feet, terminating at an intersecting fence, where a gate opens into respond-

ent's land. The way is fenced on both sides and is fifty feet in width, although the strip in actual use by vehicles is only twelve to fourteen feet wide. In its course south, the roadway crosses a creek on a small bridge, built and maintained by the county. South of this bridge, there is an entrance through a gate to appellant's land on the east. From appellant's gate south to the gate opening into respondent's land, the grade is heavy, being about fifteen per cent.

The traveled way is mostly on the east (appellant's) side of the fifty-foot fenced strip, but, in its course south, it bends to the west, and where it terminates at respondent's gate, is on the side next to his property. Running south from the end of the roadway, a fence separates the properties of the appellant and respondent. The line of this fence, if projected northerly, would bisect the fifty-foot way longitudinally, with thirty feet on appellant's side and twenty feet on respondent's side. Photographs in the record show a fairly well-defined beaten track south to respondent's gate at the end of the roadway.

In the course of the trial, numerous witnesses were examined, and there was conflict in their testimony as to the extent of the use made of the roadway in controversy. The record leaves no doubt, however, that there existed a road or trail in early days known as the "Pioneer Trail," which followed the course of the way here in dispute and extended on to a connection with roads leading to Issaquah. The general use of the road was abandoned about 1905, when another route between Fall City and Issaquah was laid out and improved. The contention of the respondent is that, while the Pioneer Trail to the south was abandoned, that part of it here in controversy always remained open and has been used continuously by respondent and his predecessors in interest, as well as

by the public. The appellant contends that the Pioneer Trail was never, in fact, a public highway; that its use was definitely abandoned when the other route was laid out; and that the use of the part of it here in issue, whatever the extent of that use, was permissive only.

The trial court, while making no findings of fact, filed a memorandum opinion, in which it said:

"I believe that the evidence establishes that this road in question was a part of a road used by the general public in traveling between Fall City and Issaquah; that this use was open, notorious, continuous, and adverse from 1888 or 1889 until 1902 or 1905, which would make it a public road. Sometime along about 1902 or 1905, the use of that portion of the said old Fall City-Issaquah road south of the gate leading into defendant Bullock's fields was abandoned by the public, and plaintiff contends that the portion of said road now in question north of said gate and connecting with the county road has also been abandoned by the public. The evidence shows that since the abandonment of the portion of said road south of the Bullock gate, travel on the part north of said gate has fallen off, and for the last several years it has been used principally by the tenants of the Bullock and Foster properties and by the public having business with said tenants. To establish an abandonment of a public road it is necessary to show nonuser by the public for a period of at least five years. It is not a question of how much or how little the public used said road after it was once established by prescription. If it is used at all, then there is no abandonment, and in my opinion the testimony establishes that at no time since 1902 has the public ceased to use said road. The evidence further shows that during this period said road has been improved by those having charge of the roads in that district for King County in the way of building the bridge over Canyon Creek and in laying timbers along the slope leading up the hill toward the gate. The plaintiff himself testified that this bridge over Canyon Creek

was repaired at least two times by the county road employees at his request.

"Plaintiff in his argument made some contention that the use of the portion of the road in question while he has been the owner of his property has been permissive. There is no evidence tending to sustain such contention, and furthermore, this road having become a public road by prescription prior to his ownership, any question of permission is immaterial."

The record supports the conclusion reached by the trial court. Apart from the testimony of several witnesses, some of them residents in the neighborhood from early days, to the continuous use of the road, it is significant that it has always been enclosed by fences, has always been open to public use, and that the appellant himself enters his land by a gateway opening from it. Also, as the court found, the bridge over the creek was built and has been maintained by the county. Being a *cul de sac*, the general public would have but little occasion to use it, but it has been used continuously by the occupants of the abutting land and open to such use as the public chose to make of it.

In *Thorsteinson v. Largaud*, 155 Wash. 341, 284 Pac. 92, where the essential facts were not unlike those present in this case, it is said:

"There is nothing of serious moment for our consideration in this case other than questions of fact. Whatever may be said in support of the contention made in behalf of the plaintiff, that the public use of this old trail and road has not been continuous and uninterrupted as to certain portions thereof, other than the portion here in question, between these two north-and-south officially established county roads, it is plain, we think, that, as to that portion of the road, the evidence shows its continuous and uninterrupted use by the public along a well defined fixed location and course for a period of more than thirty years. Thus, it plainly appears to us that at least that por-

tion of the road, the only portion here in controversy, became and remains a public highway by prescription, which no one has the right to close or otherwise obstruct. The following of our decisions support this conclusion: *Smith v. Mitchell,* 21 Wash. 536, 58 Pac. 667, 75 Am. St. 858; *Seattle v. Smithers,* 37 Wash. 119, 79 Pac. 516; *Mason County v. McReavy,* 84 Wash. 9, 145 Pac. 993.''

The fact that, by the abandonment of the greater portion of the old road, the stretch here involved forms a *cul de sac,* does not deprive it of its character as a public highway.

''It is immaterial that the traveled way may lead up to gate No. 2 and no further, not connecting on the north with another highway.

'' 'It is settled that a *cul de sac* may be a highway, or in other words that it is not essential that the highway be open at both ends so as to form a thoroughfare, but it may be closed at one end by private lands or buildings.' 15 Am. & Eng. Ency. Law (2d ed.), 351, and cases there cited.'' *State v. Rixie,* 50 Wash. 676, 97 Pac. 804.

We are of the opinion that the trial court correctly dismissed the action, and the judgment is, accordingly, affirmed.

MAIN, TOLMAN, BEALS, and STEINERT, JJ., concur.