[No. 27303-5-I.  Division One.  January 13, 1992.]

*In the Matter of the Petition To Declare County Road.*

PRIMARK, INC., *Respondent*, v. BURIEN GARDENS ASSOCIATES, *Appellant.*

*Lauren D. Studebaker* and *Thomas, Whittington, Anderson, Bergan, Studebaker & Tuttle,* for appellant.

*Alan L. Froelich,* for respondent.

BAKER, J. — Burien Gardens Associates, intervenor below and owner of property adjacent to the subject property, appeals an order granting Primark Corporation's petition under RCW 36.75.080 and RCW 2.28.150 to declare the subject property a county road. We affirm.

I

The subject property is a 30-foot-wide strip lying south of a trailer park owned by Burien Gardens. On its western end, the subject property abuts a gate at the entrance to property owned by Anthony Scheda. East of this 30-foot strip, King County has a 60-foot right of way and improved roadway known as South 144th Street, which extends from Des Moines Way South to 12th Place South. West of 12th Place South, the King County right of way is reduced to a 30-foot strip directly south of the subject property.

After this action was commenced, the county installed asphalt in its 30-foot right of way west of 12th Place South. The asphalt is 20 to 21 feet wide and extends southerly from the north line of the King County right of way, which is the south line of the subject property.

Primark Corporation (Primark) is the purchaser of the Scheda property. Closing of the sale is contingent upon Primark obtaining a building permit from King County for a multiple unit dwelling complex on the Scheda property. Under King County road standards, a 30-foot right of way would not be sufficient for access to the planned development. The required right of way would be between 48 and 60 feet, with a standard minimum right of way of 56 feet.[1]

---

[1] King County was joined and took a neutral position. A stipulation was entered providing that King County would decline to assume any maintenance obligations for the subject property until such time as the County might accept it as a road.

The record titleholder of the subject property is George F. Horton. A default order was entered against him. Horton originally owned the subject property and the parcel to the north which is now the Burien Gardens trailer park. In 1943, Horton transferred his ownership of the future trailer park property "less the south 30 feet thereof for road purposes". Later in 1943, Horton's grantee conveyed to a bank the same premises with the same exception, "less the south 30 feet thereof for road". In 1959, P.G. Lund, the developer of the trailer park, purported to grant to King County 25 feet of the subject property for use as a public road, though by virtue of the above exceptions, Lund apparently never had title to it. Lund declared that at the time he developed the park and until he sold the property in 1969, he assumed that the subject property was dedicated to the public. He observed a narrow, primitive road that was used by Scheda and the park residents.

Since 1946, Scheda used the subject property for access to his fields for the cutting and hauling of hay. He also boarded horses in that field. The road was graveled and was sometimes rough, but was passable year around.

Scheda never asked permission of anyone to use the subject property. He believed it belonged to the trailer park owners, since he observed persons residing in the trailer park using the road. After 1946, the roadway was wide enough for two cars to pass. Trucks bringing supplies into Scheda's lower field used the road. Persons for whom he boarded horses used the road. He also observed cars parking on the road at night, as in a lovers' lane use. Once for a period of approximately 1 year, a revival assembly group set up its tent on the property where the trailer park is now. Visitors to the revival assembly used the road.

In 1973, a sewer line was installed on the subject property pursuant to a King County permit.

Alvin Bennett currently lives on the Scheda property, and has lived in the neighborhood since 1979. He has assisted Scheda with haying operations on the Scheda property, and has driven on the road in that connection. In 1979 it was a

level gravel road, with deep potholes. It was sufficiently wide for two lanes of traffic, and he had seen three vehicles abreast on it at times. He always believed it was a county road and never asked anyone permission to use it. He has seen many vehicles from the trailer park using the road.

Richard Schneider, a photogrammetric expert, reconstructed the width of the road based on a series of aerial photographs dating from 1966. In 1966, the road was "primitive" and was 5 to 14 feet in width. Encroachment into the subject property from the King County right of way varied between 2 and 10 feet. In 1974, the encroachment on the most heavily traveled portion of the road varied between 9½ feet and 13 feet. The encroachment on a less heavily traveled section varied between 18 and 19 feet. In 1977, the encroachment varied between 9 and 13 feet. In 1989, the encroachment varied between 11 and 13 feet. All of Schneider's measurements were subject to a variation plus or minus of approximately 1 foot.

Silvia D. White, a resident of the trailer park for 16 years, testified that most tenants in the park used the driveway, and that it was also used as a lovers' lane. She testified that the road was wide enough for two cars and straddled what is now the northern edge of the asphalted portion within the King County right of way.

Robert Kruger, managing partner of Burien Gardens Associates, acquired the trailer park in 1984. An anchoring guywire on a telephone pole within the subject property is approximately 16 feet from the north edge of the asphalted King County right of way. The guywire anchor to the telephone pole was installed in 1977. A ditch running along the roadway in the subject property is approximately 13 to 14 feet from the north edge of the asphalt. There has been no change in the roadway edge since he has been the owner of Burien Gardens. His objection to the declaration of the county road is the increased traffic it would bring.

The trial court held that by operation of RCW 36.75.080 and by implied dedication and acceptance by the public, a county road had come into existence.

## II

Burien Gardens first contends that this action should have been brought by the County pursuant to RCW 36.75-.110 and .120, rather than by a private citizen under RCW 36.75.080.

■ RCW 36.75.110 provides that when a county declares a resolution that the "true location, course, or width of any county road is uncertain and that the same should be determined," it shall direct the county road engineer to survey the area. RCW 36.75.120 provides that when the true location of a county road has been appropriately surveyed, the county shall file an action in the superior court to determine the true location of the road, joining all persons affected.

These two statutes are inapplicable to the present action. There was testimony by a county engineer to the effect that there was no uncertainty with regard to the location, course, or width of the county right of way in the area.

■ The action was properly brought under RCW 36.75.080 which provides for the establishment of public highways by prescription. Under that statute, "[a]ll public highways in this state, outside incorporated cities and towns and not designated as state highways which have been used as public highways for a period of not less than ten years are county roads". That public highways can be so created in a period equal to that for quieting title to land has long been the law in this state, *see, e.g., Seattle v. Smithers*, 37 Wash. 119, 123, 79 P. 615 (1905); *In re Twenty-Second Ave. Southwest*, 72 Wash. 99, 102, 129 P. 884 (1913), and the enforcement of that law has not been restricted to public entities. *See, e.g., Foster v. Bullock*, 184 Wash. 254, 50 P.2d 892 (1935); *Thorsteinson v. Largaud*, 155 Wash. 341, 284 P. 92 (1930); *Smith v. Mitchell*, 21 Wash. 536, 58 P. 667 (1899). At least one more recent case decided after the enactment of the statute in a form close to its current one was indeed brought by a municipality, *see King Cy. v. Hagen*, 30 Wn.2d 847, 194 P.2d 357 (1948), but the statute contains no restriction on the rights of private citizens to enforce it.

Thus, this action was brought under the proper statute.

### III

Burien Gardens next argues this action should have been brought as a declaratory judgment under RCW 7.24.110 rather than as an action under the implied powers provision of RCW 2.28.150.

RCW 2.28.150 provides:

> When jurisdiction is, by the Constitution of this state, or by statute, conferred on a court or judicial officer all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the laws.

Although this action could have been brought as a declaratory judgment, proceeding under the implied powers act was not inappropriate. Jurisdiction to enforce RCW 36.75.080 is conferred on the superior courts of this state. However, this particular statute fails to set forth a specific procedure for its enforcement. Thus, the trial court properly proceeded under its implied powers. *See In re Cross*, 99 Wn.2d 373, 378-80, 662 P.2d 828 (1983).

### IV

Burien Gardens next contends that Primark should have joined Scheda and property owners to the south of the King County right of way. Its argument is based on the assumption that the action should have been brought under RCW 36.75.120 and the declaratory judgment act, which requires that all persons having interests which would be affected by a declaration shall be made parties. *See* RCW 7.24.110.

Reliance on the terms of the declaratory judgment act in this context is not necessary. However, it is not unwise to look to the act and cases construing it for a determination of what parties should be joined.

Generally, joinder of interested parties in a declaratory judgment action is required. *See Chemical Bank v. WPPSS*, 102 Wn.2d 874, 888, 691 P.2d 524 (1984), *cert. denied*, 471 U.S. 1065, 1075 (1985). Although this is a juris-

dictional requirement, *Henry v. Oakville*, 30 Wn. App. 240, 243, 633 P.2d 892 (1981), *review denied*, 96 Wn.2d 1027 (1982), dismissal may not be required for failure to join if an application to intervene is not timely, or if the interested parties have a designated representative. *Chemical Bank*, 102 Wn.2d at 887-88. A necessary party for these purposes is defined as one whose ability to protect its interest in the subject matter of the litigation would be impeded by a judgment. Such a party must claim a sufficient interest in the litigation such that the judgment cannot be determined without affecting that interest. *Henry v. Oakville*, 30 Wn. App. at 244-45.

Under the facts of this case, we reject the argument that the action must fail for failure to join Scheda. Primark is, in effect, standing in Scheda's shoes. Scheda testified on Primark's behalf in favor of the declaration of county road, and testified that he did "support and join in the petition". It would thus be an unnecessary formality to remand the action for purposes of joining Scheda.

As to landowners south of the existing King County right of way, Burien Gardens makes no cogent argument as to how their interests may be affected by the declaration of a county road north of the existing right of way.

V

Burien Gardens next alleges that Primark's standing as a prospective purchaser of the Scheda property is not sufficient to entitle it to institute this action. Again, the argument is primarily premised on the assumption that this action should have been brought by the County under RCW 36.75.110 and .120, an assumption we reject.

To have standing, a party must show a real interest in the subject matter of the lawsuit, that is, a present, substantial interest, as distinguished from a mere expectancy, or future, contingent interest, and the party must show that a benefit will accrue it by the relief granted. *State ex rel. Gebhardt v. Superior Court*, 15 Wn.2d 673, 680, 131 P.2d 943 (1942).

Primark has paid money on its contract with Scheda, thereby giving it a present and substantial interest in the property. Furthermore, Primark will not be able to obtain the building permit it desires unless this road is declared. Thus, Primark has shown a clear benefit to it by the relief granted. Primark has standing to bring this action.

## VI

Burien Gardens asserts that the evidence was insufficient to sustain a finding that there was general public use of the subject property for road purposes over a 10-year period.

In order to establish a highway by prescription, the public use of the way must be general, adverse, uninterrupted and continuous for a period of 10 years under a claim of right. *Wheeler v. Rendsland*, 38 Wn.2d 685, 690, 231 P.2d 322 (1951); *Stevens Cy. v. Burrus*, 180 Wash. 420, 425, 40 P.2d 125 (1935). Our standard of review for determining whether such use was shown is limited to determining whether substantial evidence supports the findings and whether the findings in turn support the trial court's conclusions. *Ridgeview Properties v. Starbuck*, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982).

Mere travel over unenclosed land by the public is regarded as permissive rather than adverse and is insufficient to establish a public highway by prescription. *Stevens Cy.*, 180 Wash. at 425.

The case of *Foster v. Bullock, supra*, concerned a roadway that became a cul-de-sac after an extension of the way was abandoned. The remaining road was fenced on both sides, lay between adjoining farms, and was used principally by the tenants of those properties and by the public having business with those tenants. It was determined to be a public way by virtue of the continuous and uninterrupted use that had been made of it prior to the abandonment of the extension. No abandonment of the remaining cul-de-sac was held to have occurred, even though it served a limited number of users. The court stated: "Being a *cul de sac*, the general public would have but little occasion to use it, but it

has been used continuously by the occupants of the abutting land and open to such use as the public chose to make of it." *Foster*, 184 Wash. at 258.

Similarly, in *Thorsteinson v. Largaud, supra*, continuous and uninterrupted use was held to have established a public highway over a way that traversed the lands of two of the parties, who were neighboring landowners. The case does not indicate the extent of the use by other parties or by members of the public other than these two owners, but the action is described as a "neighborhood road controversy". *Thorsteinson*, 155 Wash. at 341.

■ ■ The facts here are similar in that the use of this road was generally limited to local neighborhood use by residents of the trailer park, persons having business with Scheda, or Scheda himself. That use was not permissive, since none of those users ever sought or was granted permission to use it.[2] Furthermore, the use was never interrupted and continued over a period of more than 40 years. Its local nature does not prevent it from being a public use. *See Foster.* We hold the public use shown was sufficient under RCW 36.75.080 to establish a public highway.

## VII

Burien Gardens further asserts, however, that even if public use is shown, it does not justify the declaration of the entire 30-foot width as a public highway.

■ Where the right to a public highway is acquired by use, the public is not limited to such width as has actually been used. Rather, the public is entitled to a width reasonably necessary for the public easement of travel, considering the facts and circumstances peculiar to each case. *Hamp v. Pend Oreille Cy.*, 102 Wash. 184, 187, 172 P. 869 (1918). The width of adjacent streets may be considered. *Olympia v. Lemon*, 93 Wash. 508, 511, 161 P. 363 (1916).

---

[2] *Stevens Cy. v. Burrus*, 180 Wash. 420, 40 P.2d 125 (1935) is distinguishable in this regard, since the objecting landowner therein permitted certain traffic on the road, but always objected to the use of it as a permanent public highway. *Burrus*, 180 Wash. at 426. There, the court upheld the trial court's conclusion that no prescriptive rights had attached.

The uncontradicted evidence was that the adjacent King County rights of way are 60 feet wide on 12th Place South and the eastern end of South 144th Street. The required right of way for the approximately 10-acre development intended by Primark would be at least 48 and possibly 56 feet, requiring the declaration of between 18 and 26 feet of the 30-foot-wide strip as public roadway.

■ Burien Gardens correctly observes that the trial court failed to enter findings of fact supporting the public necessity for a 30-foot-wide declaration, and argues that we must therefore apply a presumption of a negative finding against Primark, the party having the burden of proof. *See Crites v. Koch*, 49 Wn. App. 171, 176, 741 P.2d 1005 (1987). However, our courts have declined to apply this presumption, where the result would be contrary to uncontroverted evidence presented at trial. *State v. Souza*, 60 Wn. App. 534, 542, 805 P.2d 237, *review denied*, 116 Wn.2d 1026 (1991).

Based on the uncontradicted facts, we find no reason to disturb the holding of the trial court that the evidence herein justified the declaration of the entire 30-foot width of the subject property as public highway.

In view of our decision, it is not necessary for us to reach the issues of common law dedication and implied acceptance.

Affirmed.

FORREST and AGID, JJ., concur.