[No. 33568-5-I.   Division One.   December 27, 1994.]

PHYLLIS A. SMITH, *Respondent*, v. WASHINGTON INSURANCE GUARANTY ASSOCIATION, *Appellant*.

*Arnold Barer* and *Daniel C. Gordy,* for appellant.

*Arthur Swanson; Michael Simpson Rogers, William R. Hickman,* and *Reed, McClure; James Beecher* and *Hackett, Beecher & Hart,* for respondent.

BECKER, J. — This is an appeal from a declaratory judgment. The dispute is between the Washington Insurance Guaranty Association (WIGA) and State Farm Mutual Automobile Insurance Company. The issue is whether WIGA is responsible for paying the share of a settlement allocated (through arbitration) to an insolvent insurer, or whether the remaining solvent insurer (State Farm) must bear that share of the settlement in addition to its own. Because the insurers did not undertake joint liability when they executed the settlement agreements, we conclude that WIGA is responsible for the insolvent insurer's arbitrated share of the settlement. Accordingly, we affirm the trial court's order that disposed of the action on summary judgment.

# I

Newlyweds Steven and Jennifer Miller both died as a result of an automobile accident on the freeway. The Miller Estates sued Morgan Trucking and its driver Melvin Little (hereafter referred to collectively as Morgan Trucking) and Phyllis Smith. Morgan Trucking was insured by American Star Insurance Company. Smith's vehicle belonged to another individual, who was insured by General Casualty Company of Wisconsin. Smith herself had liability insurance with State Farm.

American Star, General Casualty, and State Farm settled the Estates' claims on behalf of their insureds on October 27, 1992, in two release and settlement agreements. Under the terms of these agreements, each estate was to receive $375,000. The sum of $200,000 was payable to each immediately. The remaining $175,000 was to be paid following an arbitration that would determine each insurer's share of the settlement amount.[1]

---

[1] The entire "Release and Settlement Agreement" concerning the claims of the Estate of Steven Miller provides as follows:

In consideration of the payment of THREE HUNDRED SEVENTY-FIVE THOUSAND DOLLARS ($375,000.00), the undersigned JAMES A. MILLER, as Administrator of the Estate of Steven James Miller, deceased, on behalf of the estate and all beneficiaries of the estate, hereby releases all claims against MORGAN TRUCKING COMPANY, MELVIN LITTLE and PHYLLIS SMITH, and

American Star and General Casualty each paid $200,000 to satisfy the initial $400,000 required as a condition of the two agreements. By this payment, General Casualty exhausted its policy limit of $100,000 per claim. Accordingly, State Farm was to pay such share of the remaining $175,000 per claim as the arbitrators would assign to Smith. American Star was to pay such share as would be allocated to Morgan Trucking.

Three weeks after the date of the releases — on November 16, 1992 — a Wisconsin court placed American Star into liquidation. The liquidation order made American Star an "insolvent insurer" under the act[2] establishing WIGA. RCW 48.32.030(5). WIGA, a state nonprofit unincorporated entity, is obligated to pay defined "covered claims" arising from insurance policies of insolvent insurers. RCW 48.32.060.

Smith brought the present declaratory judgment action against WIGA and the Miller Estates. WIGA joined State Farm and General Casualty as additional Defendants. The

---

their agents, employees, attorneys and insurers, for the injuries and resulting death of Steven James Miller.

James A. Miller, as Administrator of said Estate, assumes all responsibility for the proper and lawful distribution of the proceeds of this settlement, including payment of any outstanding obligations for medical or related funeral expenses.

As a condition to this Settlement Agreement, it is agreed that $200,000.00 is payable to the Estate upon the execution of this document. The remaining $175,000.00 is to be paid to the Estate promptly following an arbitration by the involved insurers to establish each insurer's percentage of responsibility for funding this Settlement Agreement. The arbitration shall be conducted by the end of the year 1992.

This Agreement concludes the disputed claims of the Estate of Steven James Miller set forth in King County Superior Court Cause #91-2-22329-7. This Agreement represents a good faith compromise by the parties and is NOT an admission against the interest of any party. The above mentioned lawsuit will be dismissed with prejudice and without costs upon receipt of the payment(s) specified in this agreement.

DATED this 27 day of October, 1992.

This agreement is signed by James A. Miller, as administrator, James M. Beecher, "on behalf of Phyllis Smith, General Casualty Co., and State Farm Insurance Co.", and Ed Snook, "on behalf of Morgan Trucking, Melvin Little and American Star Insurance Co." The agreement for the Estate of Jennifer Miller is identical except for the names of the decedent and administrator.

[2]Washington Insurance Guaranty Association Act, RCW 48.32.

trial court, on summary judgment, declared WIGA to be responsible for the obligations of American Star under the settlement agreements and ordered the arbitration to be completed within 60 days of the summary judgment order, to determine the insurers' percentages of responsibility for the settlement.

The trial court's order was a final judgment from which WIGA appealed. WIGA then reached a settlement by loan receipt of all remaining amounts due the Miller Estates, and paid each estate $150,000 for a total of $300,000.[3] WIGA received an assignment of the Estates' rights under the agreements.[4]

This court denied WIGA's motion for a stay of the order to complete arbitration pending appeal. The parties to the settlement agreements went to arbitration, with WIGA standing in the shoes of American Star. The arbitrators assigned 40 percent of the settlement amount to Smith and 60 percent to Morgan Trucking.

As a result of these events, it is undisputed that State Farm (Smith's insurer) must reimburse WIGA for Smith's share of the remaining $350,000. WIGA contends State Farm should also reimburse WIGA for American Star's share.

## II

### Liability of WIGA for a "Covered Claim"

■■ This court engages in the same analysis as did the trial court on summary judgment. *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 208, 875 P.2d 1213 (1994). There are no

---

[3]Apparently, the insolvency triggered the Estates' obligation to exhaust their uninsured/underinsured coverage under RCW 48.32.100(1), and this coverage amounted to $25,000 for each estate. This amount, according to WIGA, would be offset against any amount WIGA is ultimately obligated to pay. RCW 48.32.100(1).

[4]The documentation of the loan receipt and assignment adequately preserves the status of the claim as an "unpaid claim" (and thus a "covered claim") just as though WIGA had not paid money to the Estates. Assuring prompt payment to the Estates was in keeping with the act's purposes. RCW 48.32.010. We will not penalize WIGA by holding that its payment of the funds undercut its position in litigation against State Farm.

disputed material facts. The court reviews issues of law de novo. *Rice*, at 208.

█ The purpose of the WIGA act is to ensure timely payment of claims against an insolvent insurer.

> After an insurance company is determined to be insolvent and thus unable to pay a claim, WIGA steps into the shoes of the insolvent insurer. WIGA is deemed to be the insurer to the extent of its obligation on covered claims. To that extent WIGA has all rights, duties, and obligations of the insolvent insurer as if the insurer were not insolvent. RCW 48.32.060(1)(b).

(Citation omitted.) *Washington Ins. Guar. Ass'n v. Mullins*, 62 Wn. App. 878, 881-82, 816 P.2d 61 (1991). The principle that WIGA "steps into the shoes of the insolvent insurer" is limited in that WIGA's obligation extends only to "covered claims".

The issue before us is whether American Star's share of the remaining obligation to the Miller Estates is a "covered claim" that WIGA must pay, as State Farm contends.

> "Covered claim" means an unpaid claim . . . which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer . . ..

RCW 48.32.030(4).

The trial court, in granting summary judgment against WIGA, held that a settlement obligation can be a "covered claim", relying on *Thornock v. Pack River Mgt. Co.*, 790 F. Supp. 1014 (D. Mont. 1990), *aff'd in part, rev'd in part on other grounds*, 942 F.2d 794 (9th Cir. 1991).

In *Thornock*, the plaintiff originally brought a negligence action in Montana against Pack River (Washington entities insured by Mission Insurance Company). The plaintiff agreed to release claims against Pack River in return for a payment by Mission. Mission was unable to perform the agreement as a result of its insolvency. *Thornock*, 790 F. Supp. at 1015.

█ The plaintiff sued WIGA separately to obtain WIGA's performance of Mission's obligation. The court held the statute required WIGA to honor the settlement agreement between the plaintiff and Mission, even though WIGA did not

have the opportunity to take part in the settlement negotiations. *Thornock*, 790 F. Supp. at 1016-17. The rationale of *Thornock* is that a settlement agreement, by its nature, creates an obligation on the claim arising out of the insurance policy. The obligation may therefore be a covered claim binding upon WIGA.[5]

That rationale applies here. The preinsolvency settlement contracts create obligations by American Star to the Estates arising out of the American Star policy. We nevertheless agree with WIGA that *Thornock* does not resolve the present case. A solvent insurer with liability from the settlement agreement remains in this action, whereas in *Thornock* the only insurer available to pay the settlement became insolvent. Unlike *Thornock*, where the settlement agreement specifically set forth the amount of Mission's obligation, here the settlement agreements required various insurers' unallocated shares of the settlement amount to be determined by a later arbitration.

WIGA contends State Farm benefits from WIGA's payment of American Star's share, causing this action to fall within the statute's exclusion of certain types of claims from the definition of "covered claim":

> "Covered claim" *shall not include any amount due any . . .* insurer, *. . . as subrogation recoveries or otherwise*: PROVIDED, That a claim for any such amount asserted against a person insured under a policy issued by an insurer which has become an insolvent insurer, which, if it were not a claim *by or for the benefit of a[n] . . . insurer, . . .* would be a "covered claim" may be filed directly with the receiver of the insolvent insurer, but in no event may any such claim be asserted in any legal action against the insured of such insolvent insurer.

(Italics ours.) RCW 48.32.030(4).

---

[5]WAC 284-32-070 cannot be construed as conferring administrative power upon WIGA to review and determine which preinsolvency settlements are covered claims. The WIGA act does not authorize escape from settlement agreements entered into before WIGA gains the right to defend itself. *Thornock*, 790 F. Supp. at 1016.

■ An insurance guaranty association has a responsibility to guard against unnecessary depletion of funds, and must refuse payment where another applicable source of insurance coverage exists. *PIE Mut. Ins. Co. v. Ohio Ins. Guar. Ass'n*, 66 Ohio St. 3d 209, 215, 611 N.E.2d 313, 317 (1993). An insured of an insolvent insurer can look to the guaranty association only if there is no other insurance company to turn to for coverage. *Auto Club Ins. Ass'n v. Meridian Mut. Ins. Co.*, 6 Mealey's Litig. Rep. No. 9, at 2 (Mich. Ct. App. Sept. 19, 1994).

WIGA argues that the liability of the two tortfeasors in the underlying action, Smith and Morgan Trucking, "was always" joint and several, and that the obligations of their insurers must therefore also be joint and several. According to WIGA, that means State Farm remains liable for the entire claim notwithstanding American Star's insolvency. WIGA contends Smith's present action seeking to impose liability on WIGA for the disputed remainder of American Star's share is in effect an action "by or for the benefit of" State Farm because it reduces State Farm's obligation to pay the entire remainder.

■ WIGA cites RCW 4.22.070(1)(b) in support of its assertion that the liability of the insureds (and therefore their insurers) "was always" joint and several. That tort statute and cases decided under it, including *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 294, 840 P.2d 860 (1992), are of no assistance in determining whether Smith and Morgan Trucking are jointly liable on the settlement agreements. By entering into the settlement agreements, the Plaintiff Estates gave up their yet-to-be-proved allegations of liability in tort in exchange for certain liability in contract. Whether the Defendants were ever jointly and severally liable in tort is thus a question that the parties elected not to resolve. The settlement agreements do not contain any admission of fault. They merely provide a mechanism to allocate responsibility for payment of a contracted amount.

Whether there is joint liability must therefore be determined under the common law of contracts.[6] WIGA contends the settlement agreements created a single obligation owed jointly by the insurers to the Estates, while limiting their liability among themselves to arbitrated percentages.

> At common law, a joint contract is an agreement by all of the promissors that the act promised shall be done. It is treated as the single obligation of all jointly and the individual obligation of none. For any breach of the contract, there is but one cause of action and the joint obligors are jointly liable for the damages suffered by the obligee.

*Harrison v. Puga*, 4 Wn. App. 52, 65, 480 P.2d 247, 46 A.L.R.3d 415 (1971) (quoting 2 Samuel Williston, *Contracts* § 316, at 541 (3d ed. 1959)).

The court looks to the parties' intentions to determine whether their agreements create a joint obligation. *See Turner v. Gunderson*, 60 Wn. App. 696, 704, 807 P.2d 370, *review denied*, 117 Wn.2d 1013 (1991). It is clear from the settlement contracts that the Miller Estates entered into them with the expectation that they would be paid a total of $750,000 by the other contracting parties. It is not clear that the contracts create a single, joint obligation by the promissors to perform one act — payment of the total $750,000. The agreements' provision for an arbitration that would "establish each insurer's percentage of responsibility for funding this Settlement Agreement" persuades us that the parties did not intend to make the insurers jointly liable for the total amount. The possibility that any or all insurers would become insolvent before making the postarbitration payments was a foreseeable risk assumed by the Miller Estates when they agreed to defer payment of a portion of their settlement until after arbitration.

In short, the Miller Estates had no right to collect the entire unpaid obligation of $300,000 from Smith and her

---

[6]Although WIGA also relies on the Uniform Commercial Code, the code applies to "transactions in goods". RCW 62A.2-102. This term does not include a settlement agreement in a wrongful death/personal injury action.

insurers on a theory of joint liability. The insolvency of American Star did not create joint liability that had not existed before the insolvency. Since the insurers' obligations to the Estates under the agreements are several and not joint, payment of American Star's share by WIGA does not relieve State Farm of an obligation State Farm would otherwise have. The present action is not a disguised contribution claim brought "by or for the benefit of" State Farm, but rather concerns a covered claim for which WIGA is liable. The Estates can properly look to WIGA because there is no other insurance company to turn to for the coverage promised by American Star in the settlement agreements. *See Auto Club Ins. Ass'n.* The trial court properly compelled WIGA to step into the shoes of American Star for purposes of arbitration. State Farm need pay no more than the share determined by arbitration, for which it has agreed to reimburse WIGA.

Because our analysis rejects the characterization of the action as a contribution claim, we need not decide whether a contribution claim comes within the statute's exclusion for claims "by or for the benefit of" other insurers.

### III

WIGA seeks dismissal of the suit against it on various procedural grounds, none of them persuasive.

A. The Wisconsin court's liquidation order enjoined all persons asserting claims arising out of American Star policies from further prosecuting any action against American Star, its liquidator, or "any insurance guaranty fund in any court" of Wisconsin or any other court. WIGA contends the trial court lacked jurisdiction to consider the summary judgment motion because of that language in the order. WIGA's argument must be rejected in view of *American Star Ins. Co. v. Grice*, 123 Wn.2d 131, 865 P.2d 507 (1994). Interpreting the same liquidation order, the Supreme Court endorsed WIGA's recognition that American Star's insolvency does not prevent an action against WIGA. *Grice*, 123 Wn.2d at 137.

We do not read the Wisconsin order as prohibiting the assertion of covered claims against WIGA for the further reason that it would defeat the purpose of the WIGA act.

**B.** RCW 48.32.030(4) provides that a claim which would be a covered claim if it were *not* by or for the benefit of an insurer "may" be filed with American Star's liquidator but may not be asserted against American Star's insureds. Since (as decided above) this action is not by or for the benefit of an insurer, WIGA's argument that the statute *requires* State Farm to claim directly through the liquidator is without merit.

■ C. RCW 7.24.110 requires joinder of a party whose interest would be affected by a declaratory judgment. WIGA contends that the trial court lacked jurisdiction because American Star's liquidator was not joined. We disagree. Under RCW 48.32.060(1) WIGA must stand in the shoes of the insolvent insurer, and hence, its liquidator, to the extent that the claim is a "covered claim". The failure to join an interested party need not result in dismissal if the interested party had a designated representative in the action. *Primark, Inc. v. Burien Gardens Assocs.*, 63 Wn. App. 900, 907, 823 P.2d 1116 (1992).

**D.** WIGA claims Phyllis Smith lacked standing because, having failed to obtain the limits of State Farm's coverage in satisfying the Estates' claims against her, she failed to exhaust other available coverage before bringing suit against WIGA as required by the WIGA act. RCW 48.32.100(1). WIGA's challenge to Smith's standing must fail because, as discussed above, Smith's insurers are not joint obligors on the unpaid share of the Estates' settlement.

The judgment is affirmed.

BAKER, A.C.J., and WEBSTER, J., concur.

After modification, further reconsideration denied March 13, 1995.