## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ROBERT WILBUR and DUSTIN FREDERICK,<br><br>               Plaintiffs,<br><br>v.<br><br>ADMIRAL'S COVE BEACH CLUB, a Washington non-profit corporation; and JEAN SALLS, MARIA CHAMBERLAIN, KAREN SHAAK, ROBERT PEETZ, ELSA PALMER, ED DELAHANTY and DAN JONES, individuals,<br><br>               Defendants,<br><br>SUE CORLISS,<br><br>               Appellant,<br><br>DUSTIN FREDERICK, ROBERT WILBUR, ADMIRAL'S COVE BEACH CLUB, a Washington non-profit corporation, and its BOARD OF DIRECTORS,<br><br>               Respondents. | No. 73725-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: August 1, 2016 |

LEACH, J. — In this dispute regarding interpretation of a nonprofit corporation's governing documents, intervenor Susan Corliss appeals from an order granting partial summary judgment and a declaratory judgment in favor of Robert Wilbur. Because Wilbur failed to establish that he was entitled to such a judgment as a matter of law, we reverse and remand for further proceedings.

FACTS

The Plat of Admiral's Cove, Divisions 1 through 7, is located on Whidbey Island. Owners of lots within the plat are eligible for membership in the Admiral's Cove Beach Club (Club), a nonprofit corporation. Incorporated in 1969, the Club governs the development. Club members enjoy the use of Club-owned recreational facilities, including an outdoor Olympic-sized pool with views of Puget Sound and the Olympic Mountains. The Club owns other recreational assets: a large waterfront beach area, fire pit and picnic area, volleyball and basketball courts, and a playground.

A Board of Directors (Board), elected by the members at the Club's annual membership meeting, manages the Club's day-to-day operations. The Board levies annual dues and is authorized to propose "special assessments" for unexpected costs or maintenance "at any time." A simple majority vote is required to impose special assessments on Club members. Club members vote by mail-in ballot.

Article V of the Club's articles of incorporation state its "purposes, objects and powers." Pertinent to this lawsuit, these include the power:

> 1. To construct, install, maintain and/or own and operate athletic and recreational facilities of all types and kinds for the benefit of the members.
> . . . .
> 4. To purchase, take, receive, lease, take by gift, devise or bequest, or otherwise acquire, own, hold, improve, use and otherwise deal in and with real or personal property . . . .
> 5. To sell, convey, mortgage, pledge, lease, exchange, transfer and otherwise dispose of all or any part of the property and assets.

The articles of incorporation make no specific reference to a pool, but the Club's bylaws do. The Club's bylaws list two objectives: to "[p]rovide and operate recreational facilities for the benefit of the members" and to "procure, maintain, operate, and protect the recreational (and associated safety) concerns of the members of the community." The bylaws also establish six standing committees. Two are devoted to the pool. The Pool Operations and Safety Committee "set[s] policies for operation of the club swimming pool, and establish[es] and enforce[s] safety rules and procedures." The Pool Maintenance and Improvement Committee is responsible for "maintenance of the Club Swimming Pool and the operating machinery, the buildings housing the pool equipment, rest rooms, office and fence enclosing the pool complex, pool supplies, heating, lighting, etc." and "shall obtain estimates as necessary for accomplishing such maintenance."

Over time, the pool fell into a state of disrepair. By 2012, it was largely unusable. At the Club's October 2012 annual meeting, the members unanimously passed the following motion:

> By November 10, 2012, Pool Planning by members of the Pool Maintenance, Long Range Planning and Budget Committees will work with a nonresident facilitator, as an ex-officio team member and may consult with legal counsel as warranted . . . .
>
> Under the overall objective of having the pool open as soon as a funding and construction schedule allow, the committees shall have three (3) tasks to complete by February 28, 2013, or sooner:

(1) To identify and evaluate various options related to the pool's future, including but not limited to needed equipment, a permanent pool cover, and repairs to the pool and its building, foundation, plumbing, and electrical system, and to recommend the best cost and timing options. A basic and simple plan to identify projects for contractor bidding shall be developed to guide these efforts; the plan shall also recommend an implementation schedule for ADA [Americans with Disability Act] compliance from both a financial and legal standpoint.

(2) Investigate and develop payment options related to assessment costs and dues under task one and to select the approach that produces the best balance between recreational benefits and costs to members. The assessment total will be offset by the amount of donations accumulated for that purpose.

(3) Upon completion of tasks 1 and 2, the committees shall submit the findings to the Board and subsequently work with Board as appropriate.

Over the next several months, committee members held meetings and gathered cost estimates. A consultant's inspection revealed widespread problems with the pool and pool buildings, and the consultant recommended significant renovations at a cost of approximately $650,000. The committee presented this information to the Board.

In May 2013, the Board sent a ballot to all Club members for a vote about the pool's future. The ballot presented two choices: (1) "refurbish, remodel and update the pool," requiring a special assessment of approximately $650,000, or (2) "remove the pool," requiring a special assessment of approximately $200,000. The Board included a two-page "Frequently Asked Questions" document explaining various options and

issues related to the vote. In a relatively close vote, a majority of Club members voted to remove the pool instead of refurbish it.

In September 2013, Robert Wilbur, a "pro-pool" Club member, filed a lawsuit against the Club seeking a declaration that (1) the May 2013 vote was invalid because it was inconsistent with the October 2012 motion and (2) the Club's articles of incorporation and bylaws did not permit the Board to remove or decommission the pool. Wilbur also sought an injunction restraining the Club from taking any action to remove the pool.

Wilbur moved for summary judgment. The Club took "no position" on the motion and asked the trial court to issue a declaratory ruling clarifying its legal responsibilities regarding the pool.[1] Corliss, an "anti-pool" Club member, intervened and filed a cross motion for dismissal of Wilbur's complaint.

The trial court granted partial summary judgment in favor of Wilbur and issued the following declaratory judgment:

> 1. The Admiral's Cove Beach Club ("ACBC") swimming pool and related facilities are among the athletic and recreational facilities contemplated under Article V of the Articles of Incorporation of ACBC which provides that the purpose of ACBC is "[t]o construct, install, maintain and/or own and operate athletic and recreational facilities of all types and kinds for the benefits of the members."

---

[1] After Wilbur filed his complaint but prior to the summary judgment hearing, Club members held their annual elections and replaced several "anti-pool" directors with "pro-pool" candidates.

2. ACBC and its Board of Directors must adhere to the requirements and directives set forth in the motion that was made and approved at the Defendant's annual membership meeting on October 27, 2012, unless said motion is property repealed or amended to remove the duties of the Board of Directors and ACBC, which duties are presently embodied in this motion. That particular motion, as approved, does not contain language that could be construed to permit the demolition or decommissioning of the swimming pool or related facilities as an option for the membership's future consideration.

3. The prior Board's action to present a ballot to the membership with the option to decommission the pool was contrary to the October 27, 2012, motion. It was therefore invalid and of no force and effect.

. . . .

6. In consideration of the applicable provisions of the Articles of Incorporation and Bylaws, the context in which they were promulgated, the circumstances surrounding their promulgation, and the other rules for their interpretation, the general power to dispose of property as set forth in the Articles of Incorporation and Bylaws governing ACBC, does not provide authority to the Board to dispose of the ACBC swimming pool and related facilities.

7. Any vote on a motion or other action item submitted to the membership at a regular or special meeting of the membership that would result in the demolition or decommissioning of the ACBC swimming pool, would be invalid and of no effect unless the governing documents of ACBC were first properly amended or changed to allow such action.

8. Under the governing documents as presently constituted, the members of the Board of Directors of ACBC have a legal duty and fiduciary obligation:

   a. to maintain, repair and operate the swimming pool and its related facilities in a reasonable manner and as may be required by local, state

-6-

and federal law and the governing documents themselves; and

   b.   to take affirmative action, consistent with the governing documents of Admiral's Cove Beach Club, to budget for and raise funds through properly authorized dues and assessments to carry out these duties.

9.   The Board's duties in this regard include sufficient budgeting and funding decisions that will allow for the future and continued operation and maintenance of the swimming pool and related facilities.

The trial court denied Wilbur's request for injunctive relief. Corliss appeals.[2]

## ANALYSIS

### I.   Necessary Parties

As a preliminary matter, we address Corliss's claim that the trial court lacked the authority to enter a declaratory judgment because Wilbur failed to join all Club members as necessary parties. Corliss relies on RCW 7.24.110. This statute requires that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." A "necessary party" for a

---

[2] In her assignments of error, Corliss challenges the grant of partial summary judgment in favor of Wilbur and the denial of her motion for summary judgment dismissal. However, the trial court did not deny Corliss's motion. Corliss failed to renote her motion following a request for a continuance, and it was not properly before the trial court at the time of the hearing. Instead, the trial court declined to rule on Corliss's cross motion as moot.

declaratory judgment action is one "whose ability to protect its interest in the subject matter of the litigation would be impeded by a judgment."[3]

We disagree with Corliss. There are only two positions in this case: that the Club has the authority to remove the pool or that it does not. Both positions are adequately represented by the parties to the case. The joinder of additional Club members as parties was not necessary to resolve this controversy.

II.    Summary Judgment

We review the grant of summary judgment de novo.[4] Summary judgment is appropriate only if the moving party is entitled to judgment as a matter of law.[5] We interpret the governing documents of a corporation in accordance with accepted rules of contract interpretation.[6] We give the words in a contract their plain, ordinary meaning unless the contract as a whole clearly demonstrates a contrary intent.[7] Articles of incorporation and bylaws are "'correlated documents'" that are construed together.[8] "'[S]ummary judgment is proper if the parties' written contract, viewed in light of the parties' other objective manifestations, has only one reasonable meaning.'"[9]

---

[3] Primark, Inc. v. Burien Gardens Assocs., 63 Wn. App. 900, 907, 823 P.2d 1116 (1992).

[4] Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

[5] CR 56(c).

[6] Roats v. Blakely Island Maint. Comm'n, Inc., 169 Wn. App. 263, 273-74, 279 P.3d 943 (2012).

[7] 4105 1st Ave. S. Invs., LLC v. Green Depot WA Pac. Coast, LLC, 179 Wn. App. 777, 784, 321 P.3d 254, review denied, 181 Wn.2d 1004 (2014).

[8] Roats, 169 Wn. App. at 274 (quoting Rodruck v. Sand Point Maint. Comm'n, 48 Wn.2d 565, 577, 295 P.2d 714 (1956)).

[9] Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 85, 60 P.3d 1245 (2003) (quoting Hall v. Custom Craft Fixtures, Inc., 87 Wn. App. 1, 9, 937 P.2d 1143 (1997)).

First, we consider if the Board had the authority to present Club members with the option of voting to remove the pool. We conclude that it did.

The October 2012 motion required the establishment of a committee to identify needed repairs, investigate costs, and submit this information to the Board. Wilbur does not dispute that the committee performed its assigned task. Instead, Wilbur contends the Board ignored the committee's findings and presented the Club's members with the option to remove the pool, a choice not contemplated by the motion. He argues that this option is inconsistent with the motion's stated objective of "having the pool open as soon as a funding and construction schedule allow." But the October 2012 motion governed only the actions of the committee. It did not impose any duties or constraints on the Board. And the Club's bylaws permit the Board to present special assessments to the members for a vote "at any time," regardless of whether they have been approved by motion. As a matter of law, Wilbur fails to establish the invalidity of the May 2013 vote.

Corliss also asserts that the Club has the authority, pursuant to its governing documents, to remove the pool at any time. We agree.

The articles of incorporation expressly give the Club the power to "sell, convey, mortgage, pledge, lease, exchange, transfer and otherwise dispose of all or any part of the property and assets."[10] "Dispose of" is defined as "to transfer into new hands or to

---

[10] This language is identical to that found in RCW 24.03.035(5), which provides that any nonprofit corporation has the power to "sell, convey, mortgage, pledge, lease, exchange, transfer and otherwise dispose of all or any part of its property and assets."

the control of someone else (as by selling or bargaining away) . . . to get rid of: throw away: discard . . . to treat or handle (something) with the result of finishing or finishing with."[11]  Thus, a plain reading of the Club's governing documents demonstrates the Club has the broad authority to remove or decommission any of its "property and assets."

Wilbur argues that the words "property" and "assets" are general terms that do not include the pool.  Instead, Wilbur contends, the pool is an "athletic and recreational facility" which the articles of incorporation require to be "maintained and operated."  We find this interpretation strained.  First, the articles of incorporation state that the Club may dispose of "all or any part" of the property.  This phrase states that anything the Club owns is subject to disposal.  The articles of incorporation do not mention the pool by name or specifically exempt the pool from disposal.  Second, the use of the phrase "property and assets" elsewhere in the bylaws shows an intent that these words include the pool.  For example, article III, section 7 of the bylaws, which provides that Club membership is appurtenant to ownership of property in Admiral's Cove, states that "no member whose membership is transferred [through sale or devise of the property] shall be entitled to share or participate in any of the property or assets of the Club." (Emphasis added.)  This clearly indicates that if a Club member ceases to belong to the Club, he or she loses the benefits of Club membership, including use of the swimming pool.

---

[11] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 654 (2002).

Wilbur argues that because the bylaws establish two committees devoted to pool-related issues, this shows a strong intent to maintain and operate the pool. But the existence of these committees does not guarantee or compel the perpetual presence of a pool.[12] For example, the bylaws also establish a Grounds and Building Committee, which is responsible for maintenance of and improvements to the Club's grounds, including "playfields, playground equipment, the shelter and stoves, picnic tables, flower beds, etc." But this does not mean that the Club lacks the authority to get rid of a broken swing set or a dilapidated picnic shelter.

We conclude that the Club's current governing documents give it the power to remove or decommission the pool. We also conclude that the October 2012 motion did not prohibit the Club from allowing the members to vote whether to remove the pool. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

WE CONCUR:

---

[12] We note that while Wilbur argued below that he possessed a property interest in the pool, he expressly abandons this claim on appeal.