[No. 16197-8-III.   Division Three.   March 19, 1998.]
RICHARD E. STEURY, ET AL., *Respondents*, v. ROBERT B. JOHNSON, JR., ET AL., *Appellants*.

*Brian R. Ragen* of *Ragen Law Office*, for appellants.
*Robert E. Kovacevich*, for respondents.

SCHULTHEIS, C.J. — Robert and Judy Johnson own a lot by Liberty Lake. Richard and Lois Steury own the lot adjacent to and south of the Johnsons. A 20-foot wide easement runs along the eastern boundary of the Johnsons' lot to benefit the Steurys and other adjacent properties as a private road. Concerned about increased public traffic on the easement road, the Johnsons set up posts at the northern end of the easement and placed a cable gate across the entrance. The Steurys sued for a permanent injunction against gating the road. Their motion for partial summary judgment was granted and the Johnsons were permanently enjoined from gating the easement. On appeal, the Johnsons contend there are issues of material fact regarding the intended use of the easement, the changes in that use over the years and the relative inconvenience to the dominant easement owners. We reverse and remand.

The Steurys bought their lake property in 1967. After using the property as a summer home for 22 years, they rebuilt the house and moved onto the lot as their primary residence in 1990. The Johnsons bought the adjacent property to the north in 1990 and completed construction of a primary residence there late that year. Along the eastern border of the Johnsons' lot is a 20-foot wide easement for a private roadway (the 1955 easement) to be used by the adjoining landowners, including the Steurys. This roadway, which declines steeply from its northern entrance, has been used on a daily basis since the Steurys moved onto the property full time. The Steurys' deed also describes another easement for their benefit along the southern border of the Johnson property, from the eastern roadway to the Steury parcel.

By the summer of 1992, the Johnsons had decided that public use of the 1955 easement had increased to a dangerous and inconvenient level. They estimated that cars traveled down the easement from 50 to 60 times a day, all but

12 to 20 of those trips by nonresidents. Mr. Johnson installed concrete and metal posts on either side of the northern entrance and began asking drivers to use another route. When the traffic continued unabated, he installed a locking cable from post to post in the autumn of 1992. The Johnsons gave keys to each of the property owners benefited by the easement. Although the Steurys had been on a protracted vacation, they received two keys when they returned and found the cable up.

The Steurys filed a summons and complaint in October 1994 alleging the cable obstructed access to their home for them, for their friends and family, and for emergency services. They requested a permanent injunction against obstructing the 1955 easement, quiet title to the easement and quiet title to an overlapping legal description to the northern boundary of their property. In April 1995, the Steurys moved for partial summary judgment on the injunction and quiet title claims. After a hearing held in May, the trial court granted the partial summary judgment and enjoined the Johnsons from erecting a barrier of any kind across the easement. The Johnsons appealed in July 1995, but a commissioner of this court ruled that the order was not appealable as of right. After the Steurys abandoned their claim for damages and waived all remaining issues, an order of final adjudication was entered in October 1996 and the Johnsons again appealed.

The Johnsons contend the trial court erred in finding that a gate across the easement interferes with the use of the right-of-way as a matter of law. Citing *Rupert v. Gunter*, 31 Wn. App. 27, 29, 640 P.2d 36 (1982), they argue that the court should have balanced the inconvenience to the dominant estate with the hardship to the servient estate, and contend this balance involves questions of fact not properly decided in summary judgment.

■ We review the grant of a summary judgment de novo, considering the facts in the light most favorable to the non-moving party. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 811, 828 P.2d 549 (1992). Summary judgment is

appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Cowiche Canyon*, 118 Wn.2d at 811. While a question of fact is usually left to the trier of fact, when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law. *Ruffer v. St. Frances Cabrini Hosp.*, 56 Wn. App. 625, 628, 784 P.2d 1288, *review denied*, 114 Wn.2d 1023 (1990). Once the moving party has shown the absence of any genuine issue of material fact, the nonmoving party must set forth evidentiary facts rebutting the moving party's contentions and supporting the existence of a material issue of fact. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988).

██ A suit for an injunction is an equitable proceeding addressed to the sound discretion of the trial court, to be exercised according to the circumstances of each case. *Federal Way Family Physicians, Inc. v. Tacoma Stands Up For Life*, 106 Wn.2d 261, 264, 721 P.2d 946 (1986); *Rupert*, 31 Wn. App. at 30. Appellate courts must give great weight to the trial court's decision, interfering only if it is based on untenable grounds, is manifestly unreasonable or is arbitrary. *Federal Way*, 106 Wn.2d at 264; *Rupert*, 31 Wn. App. at 30. Here, we ask whether the trial court abused its discretion in permanently enjoining the Johnsons from maintaining a cable or gate across the entrance to the easement.

██ Whether or not the owner of a servient estate may erect a gate across an easement depends on the intention of the parties involved in the creation of the easement. *Rupert*, 31 Wn. App. at 30-31. If the easement is ambiguous or silent regarding certain points, the rules of construction call for examination of the situation of the property, the parties and the surrounding circumstances. *Id.* at 31; *City of Seattle v. Nazarenus*, 60 Wn.2d 657, 663, 374 P.2d 1014 (1962). The easement in question here contains no language regarding obstructions or maintenance.

Ten years before creating the 1955 easement, the Steu-

rys' predecessors in interest obtained an easement to a right-of-way south of the Johnsons' property. This 1945 easement grants the dominant owner the right to cut and remove brush, trees and other obstructions. In their motion for summary judgment, the Steurys argued that the nonobstruction language in the 1945 easement is evidence of the intent of the parties in the 1955 easement. Since the parties to the two easements are not identical, the language in the earlier easement is not relevant to this case.

■ The express intent of the parties to the 1955 easement was to create a private roadway for the properties south of and adjacent to the Johnson property. As servient owners, the Johnsons are entitled to impose reasonable restraints on the right of way to avoid a burden on the servient estate greater than that originally contemplated. *Green v. Lupo*, 32 Wn. App. 318, 324, 647 P.2d 51 (1982); *Rupert*, 31 Wn. App. at 31. Similar facts in *Rupert* led the court to declare that

> [w]hen the owner of a servient estate is being subjected to a greater burden than that originally contemplated by the easement grant, the servient owner has the right to restrict such use and to maintain gates in a reasonable fashion necessary for his protection, as long as such gates do not unreasonably interfere with the dominant owner's use.

*Rupert*, 31 Wn. App. at 31.

The determination of the change in the circumstances of the easement and the balancing of the servient owner's burden with the dominant owner's inconvenience are fact-driven inquiries. The decision in *Rupert* is instructive. As here, the *Rupert* easement was silent concerning gates. The public had begun to use the *Rupert* private roadway, occasionally speeding and putting children at risk. Presuming that the parties to the original easement did not intend for the public to speed along the private roadway, the trial court found that a lightweight gate was a reasonable restriction on use and did not unreasonably interfere with the dominant owner's use. *Rupert*, 31 Wn. App. at 31-32.

After examining the facts and the equities, the appellate court agreed.

Faced with similar facts here, the trial court did not weigh the relative burdens of the dominant and servient estates. Instead, the court appears to find that any interference with the easement right of way is prohibited as a matter of law. After noting that the Steurys have used the easement since 1967, the court declares in its oral opinion that "the defendants' [sic] purchased their property knowing of the easement. They built their home knowing of the roadway easement, and I see no law, nor equity that allows the gate to stand."

Clearly the balancing test of *Rupert* and *Green* might allow the gate to stand. The Johnsons submitted declarations of two other dominant owners who state that the gate has dramatically reduced the traffic, noise, litter and risk caused by public use of the easement. These declarations rebut the Steurys' claims that there has been no appreciable increase in public use of the roadway and raise facts material to the remaining issue: whether a gate is a reasonable restraint that will not unreasonably interfere with the dominant owner's use. In light of this evidence, summary judgment was not appropriate. The trial court abused its discretion in imposing a summary injunction without proper consideration of the *Rupert* balancing test.

Reversed and remanded for trial.

KURTZ and KATO, JJ., concur.