23 P.3d 520 (2001)
106 Wash.App. 231
STANDING ROCK HOMEOWNERS ASSOCIATION, an unincorporated association of homeowners in Chelan County, State of Washington; Wenatchee Pines, Inc., a Washington corporation, Respondents,
v.
Jim and "Jane Doe" MISICH, husband and wife, Appellants.
No. 18930-9-III.
Court of Appeals of Washington, Division 3, Panel Ten.
May 17, 2001.
*523 Margaret L. Arpin, Spokane, for Appellants.
J. Patrick Aylward, Donald L. Dimmitt, Stephanie A. Thies, Jeffers, Danielson, Sonn & Aylward, Wenatchee, for Respondents. *521
*522 BROWN, J.
In this dispute over the installation and destruction of gates set across a road easement, James Misich appeals a judgment awarding Standing Rock Homeowner's Association damages, injunctive relief, and attorney fees. Concurrently, Mr. Misich asserts the trial court improperly denied his claim for a public road by prescription. Finding neither errors of law nor abuse of discretion, we affirm.

FACTS
Standing Rock is an unincorporated association of property owners in a Chelan County development located south of Ponderosa Pines, a development earlier known as Primitive Park, Inc. Marvin Pearson's property separates the two developments. Wenatchee Pines, Inc. is located immediately south of Standing Rock. James Misich owns property in Ponderosa Pines. Ponderosa Pines owners have a road easement running through Standing Rock over an unpaved graveled lane called Camp 12 Road. Primitive Park reserved the easement when it conveyed property to Standing Rock's predecessor in interest. Wenatchee Pines also has a road easement along Camp 12 Road running through Standing Rock.
Camp 12 Road connects with a public road linking the towns of Plain and Leavenworth. It runs partly through Forest Service land generally open to the public, except in case of emergency conditions requiring temporary closure. The road is impassable at times of the year. It has sharp corners, is poorly maintained in certain locations, and is somewhat hazardous to travel in a passenger car. Various persons, including Ponderosa Pines property owners have used Camp 12 Road since at least the late 1960s or early 1970s. Several Ponderosa Pines property owners regularly used Camp 12 Road to travel to Leavenworth.
Sandra Izett, a Wenatchee Pines property owner for more than 30 years, saw members of the general public using Camp 12 Road near her property. Ms. Izett believed she had the right to travel the length of Camp 12 Road. Until the early 1990s, the Standing Rock property was largely undeveloped. But, by the time of trial, approximately 12 vacation structures had been erected on Standing Rock lots. Standing Rock owners suffered a considerable amount of trespass and vandalism to their properties. Beginning in 1993, to prevent trespass and vandalism and to reduce maintenance, these owners erected gates across the northern and southern ends of the portion of Camp 12 Road running through Standing Rock. The gates were initially locked; later they were left unlocked. The northern gate (Standing Rock gate) is permissively located on Mr. Pearson's property. The southern gate (Wenatchee Pines gate) is permissively located on Wenatchee Pines. The county does not maintain Camp 12 Road. It is not designated a public road. Standing Rock owners pay assessments for road maintenance. The *524 gates resulted in reduced traffic through Standing Rock.
Ponderosa Pines property owners removed and destroyed 10 to 12 of Standing Rock's gates. James Misich was present at these "gate parties." Finding of Fact (FF) 8. In April 1998, Standing Rock and Wenatchee Pines filed suit against Mr. Misich for declaratory judgment, injunctive relief, trespass, and damages. Wenatchee Pines sought to establish that Mr. Misich had no easement across its property through Camp 12 Road and therefore had no right to touch the Wenatchee Pines gate. Standing Rock sought to establish that the Standing Rock gate did not constitute an unreasonable burden on Mr. Misich's easement. Alleging a trespass it later abandoned, Wenatchee Pines sought to enjoin Mr. Misich from touching its gate. Standing Rock sought to enjoin Mr. Misich from destroying its gate. Both Wenatchee Pines and Standing Rock sought damages for gate destruction, particularly on or about August 16, 1996.
In June 1998, Mr. Misich answered admitting he "removed alleged gate on more than one occasion, and that he did so on or about August 16, 1996." Clerks Papers (CP) at 160. Mr. Misich further alleged he merely removed the gates and left them by the roadway. Mr. Misich's answer included a counterclaim for declaratory judgment and injunctive relief. Mr. Misich sought declaratory judgment establishing Camp 12 Road to be a public road, and an injunction preventing Wenatchee Pines and Standing Rock from interfering with public access. In late May 1999, a few days before trial started, Mr. Misich amended his answer and counterclaim to deny he actually removed the gates, alleging instead that he merely observed others remove the gates.
After an extensive bench trial, the trial court issued a memorandum opinion with 19 findings of fact and 11 conclusions of law. The trial court decided the portion of Camp 12 Road running through Standing Rock had not become a public road by prescription, but decided by prescription the portion of Camp 12 Road running through Wenatchee Pines had become a public road. Wenatchee Pines did not appeal. The trial court further decided the unlocked gates were reasonable restraints on the easement in light of Standing Rock's history of trespass and vandalism. In November 1999, the trial court entered final findings, conclusions, and judgment against Mr. Misich, including $2,050.02 in damages, $296.25 in costs, and $15,000 in attorney fees.
Mr. Misich appealed.

ISSUES
Did the trial court err by (A) not declaring the portion of Camp 12 Road running through Standing Rock to be a public road by prescription under RCW 36.75.080, or (B) by abusing its equitable discretion when concluding Standing Rock could maintain unlocked gates? And, did the trial court err in (C) holding Mr. Misich financially liable for gate damage or (D) attorney fees under RCW 4.24.630?
Standing Rock argues we should deny this appeal because Mr. Misich failed to comply with RAP 10.3 and 10.4. We deem this issue a preliminary motion to dismiss. However, we decide the briefing is not so deficient as to prevent review of this appeal and deny the motion. State v. Olson, 126 Wash.2d 315, 323, 893 P.2d 629 (1995). The unchallenged findings are verities on appeal. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994).

A. Public Road
Mr. Misich, relying on American Nursery Products, Incorporated v. Indian Wells Orchards, 115 Wash.2d 217, 797 P.2d 477 (1990), incorrectly argues this court independently reviews the trial court's findings of fact to determine whether they support the conclusions of law. On the contrary, we review solely findings to which the parties assign error. Hill, 123 Wash.2d at 647, 870 P.2d 313. If substantial evidence supports the challenged findings, they are binding on appeal. Id. Because Mr. Misich challenges solely Finding of Fact 19, relating to his alleged destruction of the gates, the other findings are verities. Id. at 644, 870 P.2d 313.
"Prescriptive rights are not favored in the law, and the burden of proof is upon *525 the one who claims such a right." Granite Beach Holdings, LLC v. Dep't of Natural Res., 103 Wash.App. 186, 200, 11 P.3d 847 (2000). "The claimant must prove that his use of the land has been open, notorious, continuous, and uninterrupted for 10 years over a uniform route adverse to the owner." Id. "The claimant has the burden to prove all of the required elements." Id. "Where the land is vacant, open, unenclosed, and unimproved, use is presumed permissive." Id. "In such a case, evidence is required indicating that the use was indeed adverse and not permissive." Id.
"This rule springs from the modern tendency to restrict the right of prescriptive use to prevent mere neighborly acts from resulting in deprivation of property." Id. at 200, 11 P.3d 847. "If express permission is given to use the right of way, use does not ripen into a prescriptive easement unless the user makes a distinct, positive, assertion of a right adverse to the property owner." Id. "Possession is adverse if a claimant uses property as if it were his own, entirely disregards the claims of others, asks permission from nobody, and uses the property under a claim of right." Id.
These common law principles apply when the claimant seeks to establish a public road by prescription under RCW 36.75.080. See Primark, Inc. v. Burien Gardens Assocs., 63 Wash.App. 900, 908-09, 823 P.2d 1116 (1992). RCW 36.75.080 partly states: "All public highways in this state, outside incorporated cities and towns and not designated as state highways which have been used as public highways for a period of not less than ten years are county roads[.]" But "[m]ere travel over unenclosed land by the public is regarded as permissive rather than adverse and is insufficient to establish a public highway by prescription." Primark, 63 Wash.App. at 908, 823 P.2d 1116 (citing Stevens County v. Burrus, 180 Wash. 420, 425, 40 P.2d 125 (1935)).
When, as here, the trial court's critical findings are unchallenged; the question of adverse or permissive use is purely a question of law. See Lingvall v. Bartmess, 97 Wash.App. 245, 250, 982 P.2d 690 (1999). In this connection, Mr. Misich complains the trial court did not enter findings specific to RCW 36.75.080 and RCW 36.75.300. His contention is unpersuasive as the trial court correctly noted that the common law elements of a prescriptive easement apply to establishing a public road by prescription under RCW 36.75.080. Primark, 63 Wash. App. at 908, 823 P.2d 1116. And, RCW 36.75.300 does not apply between private parties, as that statute pertains solely to a county's authority to classify and designate primitive roads.
The trial court's unchallenged findings show: (1) Mr. Misich had an express easement over the portion of Camp 12 Road traversing Standing Rock; (2) Standing Rock was essentially undeveloped until the early 1990s; and (3) the gates first went up in 1993. Under these facts, Mr. Misich's claim must necessarily fail.
First, Mr. Misich has an express easement across Standing Rock. Assuming without deciding that destruction of the gates converted the permissive use to adverse use, Mr. Misich cannot show adverse use for the required 10 years. See Lee v. Lozier, 88 Wash. App. 176, 181, 945 P.2d 214 (1997) (permissive use is not adverse and does not trigger prescriptive period). Second, the public's use of the easement across Standing Rock's property until the early 1990s was presumed permissive due to the undeveloped status of that property, and the unchallenged findings of fact do not establish adverse use by the public for the required 10 years. See Primark, 63 Wash.App. at 908, 823 P.2d 1116. Third, it is unclear whether Mr. Misich, who has long enjoyed an express easement across Standing Rock, has proper standing to seek a prescriptive road on behalf of the general public. See Id. at 907, 823 P.2d 1116 (noting that to establish standing, party must show it will benefit from relief granted).
Given the above, we conclude the trial court did not err.

B. Gates
"A suit for an injunction is an equitable proceeding addressed to the sound discretion of the trial court, to be exercised according to the circumstances of each case." *526 Steury v. Johnson, 90 Wash.App. 401, 405, 957 P.2d 772 (1998) (citing Fed. Way Family Physicians, Inc. v. Tacoma Stands Up For Life, 106 Wash.2d 261, 264, 721 P.2d 946 (1986); Rupert v. Gunter, 31 Wash.App. 27, 30, 640 P.2d 36 (1982)). "Appellate courts must give great weight to the trial court's decision, interfering only if it is based on untenable grounds, is manifestly unreasonable or is arbitrary." Steury, 90 Wash.App. at 405, 957 P.2d 772 (citing Fed. Way, 106 Wash.2d at 264, 721 P.2d 946; Rupert, 31 Wash.App. at 30, 640 P.2d 36).
As noted earlier, Mr. Misich has not assigned error to the relevant findings. Thus, they are verities on appeal. See Green v. Lupo, 32 Wash.App. 318, 322-23, 647 P.2d 51 (1982) (construing easement grant). "Whether or not the owner of land, over which an easement exists, may erect and maintain fences, bars, or gates across or along an easement way, depends upon the intention of the parties connected with the original creation of the easement, as shown by the circumstances of the case; the nature and situation of the property subject to the easement; and the manner in which the way has been used and occupied." Rupert, 31 Wash.App. at 30-31, 640 P.2d 36 (citing Evich v. Kovacevich, 33 Wash.2d 151, 204 P.2d 839 (1949)).
Both sides concede the easement deed is silent on the subject of gates. "[I]f the easement is ambiguous or even silent on some points, the rules of construction call for examination of the situation of the property, the parties, and surrounding circumstances." Rupert, 31 Wash.App. at 31, 640 P.2d 36 (citing Seattle v. Nazarenus, 60 Wash.2d 657, 374 P.2d 1014 (1962)). "When the owner of a servient estate is being subjected to a greater burden than that originally contemplated by the easement grant, the servient owner has the right to restrict such use and to maintain gates in a reasonable fashion necessary for his protection, as long as such gates do not unreasonably interfere with the dominant owner's use." Rupert, 31 Wash.App. at 31, 640 P.2d 36; 28 C.J.S. Easements § 98(b), at 781 (1941); accord Steury, 90 Wash.App. at 406, 957 P.2d 772; Green, 32 Wash.App. at 324, 647 P.2d 51.
The trial court's unchallenged findings establish the following: (1) Standing Rock was essentially undeveloped at the time it granted the easement; (2) development began on Standing Rock in the early 1990s; (3) subsequent to that development, Standing Rock lot owners "suffered a considerable amount of trespass and vandalism to their properties[;] " FF 14; (4) the Standing Rock lot owners "pay a periodic assessment to cover maintenance costs" for Camp 12 Road; FF 16; (5) the purposes of the gates were to decrease trespass and vandalism and reduce wear and tear on the road; (6) the gates were initially locked but later left unlocked; and (7) the gates reduced the amount of traffic running through Standing Rock.
In sum, trespassers and vandals used Camp 12 Road to access Standing Rock. The non-permissive use raised concerns of increased maintenance costs at Standing Rock's expense. Thus, the easement had become a greater burden on the servient estates than contemplated in 1965. Testimony indicated the unlocked gates at the entrance points to Standing Rock discouraged unauthorized use and minimized wear and tear on the road while allowing relatively free passage for easement holders. Therefore, the trial court did not abuse its discretion by striking an equitable balance between the parties and thus deciding the unlocked gates could remain as reasonable burdens on the easement.
Accordingly, the trial court did not err.

C. Damages
Mr. Misich specifically challenged Finding of Fact 19 on page 25 of his opening brief. Finding of Fact 19 states:
Defendant participated in the removal of the gates in a variety of ways. He was present during the removals. See, e.g., Exhibits 17 and 18. He gave rides to other persons to the "gate parties" at which the removals were carried out. He carried tools with him in his truck and made the tools available for use during the actual destruction. He offered advice and suggestions to those actually performing the destruction as to how best to cut down *527 and/or destroy the gates. He engaged in conversations with other Ponderosa Pines owners regarding whether gates were in existence at any particular time and the need to remove the gates. Also, defendant admitted in his original answer in this matter destruction of the gates.
"When the trial court has weighed the evidence, our review is limited to determining whether the court's findings are supported by substantial evidence and, if so, whether the findings support the court's conclusions of law and judgment." Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc., 102 Wash.App. 422, 425, 10 P.3d 417 (2000) (citing Brin v. Stutzman, 89 Wash.App. 809, 824, 951 P.2d 291, review denied, 142 Wash.2d 1018, 16 P.3d 1266 (1998)). "The challenged findings will be binding on appeal if they are supported by substantial evidence in the record." In re Contested Election of Schoessler, 140 Wash.2d 368, 385, 998 P.2d 818 (2000) (citing State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994)). "Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding." Hill, 123 Wash.2d at 644, 870 P.2d 313. "The party challenging a finding of fact bears the burden of showing that it is not supported by the record." Panorama Vill., 102 Wash.App. at 425, 10 P.3d 417 (citing Brin, 89 Wash.App. at 824, 951 P.2d 291).
Marvin Pearson testified he witnessed every incident of destruction of the Standing Rock gate and each time Mr. Misich was present. As Mr. Pearson recalled, Mr. Misich would have "one of his followers" cut down the gates. Report of Proceedings (RP) (6/1/99) at 132. According to Mr. Pearson, Mr. Misich transported people and tools to the gate parties. Mr. Pearson said Mr. Misich would advise how to cut the gate and supervise removal. The trial court admitted photos of one of the gate parties showing Mr. Misich's participation.
Mrs. Pearson testified she too had witnessed Mr. Misich's presence at the destruction of the Standing Rock gates and had argued with him over the matter. When describing the August 1996 incident, Mrs. Pearson related Mr. Misich was "[s]tanding there telling them how to cut the gate." RP (6/2/99) at 177.
Although Mr. Misich and his witnesses gave a conflicting version of the facts, the above evidence substantially supports Finding of Fact 19. One of Mr. Misich's supporting witnesses admitted discussing gate removal with Mr. Misich. And, Mr. Misich admitted on cross-examination making a prior sworn statement saying he had removed a gate in 1993. His original answer admitted destroying a gate on or about August 16, 1996. Additionally, he acknowledged he had admitted destroying the gate several times.
We defer to the trial court in matters of credibility. Hilltop Terrace Homeowner's Ass'n v. Island County, 126 Wash.2d 22, 34, 891 P.2d 29 (1995). A rational fair-minded person could conclude Mr. Misich participated in the gate removals. Contested Election of Schoessler, 140 Wash.2d at 385, 998 P.2d 818. Because substantial evidence supports Finding of Fact 19, it is a verity on appeal. Id. at 385-86, 998 P.2d 818.
The next question is whether Finding of Fact 19 supports Conclusion of Law 9:
Defendant is liable for the wrongful destruction of the gates, either as a primary actor or as a joint tort-feasor. RCW 4.24.630; RCW 4.22.030; Elliot[Elliott] v. Barnes, 32 Wash.App. 88, 90 91, 645 P.2d 1136 (1982). Standing Rock had permission to erect gates at its own expense on the property of Wenatchee Pines and Marvin Pearson. Standing Rock thus is the "injured party" within the meaning of RCW 4.24.630. Defendant's actions in destroying the gates were wrongful in that defendant acted intentionally and while having reason to know that he lacked authorization to so act. Standing Rock shall recover from defendant treble damages in the amount of $2,052.02.
The trial court concluded Mr. Misich was liable as a primary or joint tort-feasor under RCW 4.24.630; RCW 4.22.030; and Elliott v. Barnes, 32 Wash.App. 88, 90-91, 645 P.2d 1136 (1982).
RCW 4.24.630(1) partly states:

*528 Every person who goes into the land of another and who ... wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste or injury. For purposes of this section, a person acts "wrongfully" if the person intentionally and unreasonably commits the act or acts while knowing, or having some reason to know, that he or she lacks authorization to so act. Damages recoverable under this section include, but are not limited to, damages for the market value of the property removed or injured, and for injury to the land, including the costs of restoration. In addition, the person is liable for reimbursing the injured party for the party's reasonable costs, including but not limited to investigative costs and reasonable attorneys' fees and other litigation-related costs.
RCW 4.22.030 states: "Except as otherwise provided in RCW 4.22.070, if more than one person is liable to a claimant on an indivisible claim for the same injury, death or harm, the liability of such person shall be joint and several." If the trier of fact determines the claimant is free of fault, the defendants "against whom judgment is entered" are held jointly and severally liable for the total of the claimant's damages. RCW 4.22.070(1)(b).
The trial court relied partly on Elliott, when discussing joint tort liability. However, Division Two decided Elliott well before the Legislature enacted RCW 4.22.070, which effectively abolished "joint and several liability in most circumstances in favor of proportionate liability." Kottler v. State, 136 Wash.2d 437, 443, 963 P.2d 834 (1998) (citing Laws of 1986, ch. 305; Washburn v. Beatt Equip. Co., 120 Wash.2d 246, 294, 840 P.2d 860 (1992)). Further, the Legislature amended RCW 4.22.030 to make it applicable "[e]xcept as otherwise provided in RCW 4.22.070." "While RCW 4.22.030 suggests that RCW 4.22.070 is an exception to a general rule, RCW 4.22.070 is in fact an exception that has all but swallowed the general rule." Washburn, 120 Wash.2d at 294 n. 7, 840 P.2d 860; accord, Kottler, 136 Wash.2d at 443 n. 5, 963 P.2d 834.
Thus, "RCW 4.22.070, the centerpiece of the 1986 amendatory package, requires all liability be apportioned unless a listed exception applies in which case joint and several liability is retained." Kottler, 136 Wash.2d at 443, 963 P.2d 834. Joint and several liability would apply if the defendants had been acting in concert or the claimant was free of fault, and judgment had been entered against each defendant. RCW 4.22.070(1)(a), (b); Kottler, 136 Wash.2d at 446, 963 P.2d 834.
RCW 4.22.070 ordinarily requires a trial court to enter specific findings as to the degree of "fault" for each tortfeasor to establish proportionate liability. For purposes of proportional liability, the Legislature defined "fault" as "acts or omissions ... that are in any measure negligent or reckless." RCW 4.22.015. Because the statutory definition of "fault" does not include "intentional acts or omissions[,]" RCW 4.22.070 does not apply to intentional torts. Welch v. Southland Corp., 134 Wash.2d 629, 634, 952 P.2d 162 (1998).
Summarizing so far, RCW 4.22.030 joint and several liability principles still apply to intentional torts. And, as the plain language of RCW 4.24.630(1) envisions wrongful conduct, any violation of that statute is analogous to an intentional tort like trespass to personal property or conversion. See 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE, TORT LAW AND PRACTICE §§ 13.32-33 (2nd ed.2000). Accordingly, both RCW 4.22.030 and the common law equivalent discussed in Elliott apply directly to Mr. Misich's conduct regardless of the later-enacted RCW 4.22.070.
The next question is whether Finding of Fact 19 establishes Mr. Misich's joint liability for destruction of the gates under RCW 4.24.630(1). It does. The trial court found Mr. Misich discussed removing the gates with other Ponderosa Pines lot owners, and then provided transportation, tools, and advice to those actually removing the gates. Mr. Misich claims he did not "wrongfully" destroy the gates under RCW 4.24.630(1), because he thought he was merely defending his property right or removing a public nuisance *529 on a public road in accordance with a 1993 court order dismissing a related 1993 anti-harassment claim. However, the 1993 trial court merely dismissed the anti-harassment matter after deciding the forum was not the place to quiet title to an alleged easement; it did not establish a right for Mr. Misich to take down or damage the gates. Certainly after the 1993 dismissal, Mr. Misich either knew, or had reason to know, he lacked authorization to continually take down the gates. RCW 4.24.630(1).
Thus, this record shows Mr. Misich acted (1) in concert with others, (2) with unity of purpose, and (3) with the knowledge and consent of other actors to facilitate gate destruction. RCW 4.22.030; Elliott, 32 Wash.App. at 90-91, 645 P.2d 1136. Although the Standing Rock gate was situated on the land of a non-party, Mr. Pearson, the gate was installed, maintained, and replaced repeatedly at Standing Rock's expense. Therefore, Standing Rock was an injured party under RCW 4.24.630(1). Accordingly, the trial court did not err in finding Mr. Misich liable as a joint tortfeasor under RCW 4.24.630(1). The specific amount of damages is uncontested.
D. Attorney Fees
The trial court awarded Standing Rock $15,000 in attorney fees. The specific amount is uncontested. Attorney fees are authorized under RCW 4.24.630(1). Where a statute allows an award of attorney fees to the prevailing party at trial, the appellate court has inherent authority to make such an award on appeal. Ur-Rahman v. Changchun Dev., Ltd., 84 Wash.App. 569, 576, 928 P.2d 1149 (1997); Sarvis v. Land Res., Inc., 62 Wash.App. 888, 894, 815 P.2d 840 (1991). Standing Rock prevailed at trial and on appeal. Thus, it is entitled to attorney fees on appeal, provided it complies with RAP 18.1(d).

CONCLUSION
We decide the trial court did not err in any of the ways alleged by Mr. Misich and award attorney fees to Standing Rock as the prevailing party here.
Affirmed.
WE CONCUR: KURTZ, C.J., KATO, J.