FILED
5/19/2025
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| ANDREW KO, AS TRUSTEE FOR THE ANDREW KO LIVING TRUST, | No. 85939-1-I (consolidated with No. 86008-9-I) |
| Appellant/Cross Respondent, | |
| v. | UNPUBLISHED OPINION |
| DARIN and LISA CHESTNUT, a marital community, and STRANDVIK HOMEOWNERS ASSOICATION, | |
| Respondents/Cross Appellants. | |

BOWMAN, A.C.J. — Andrew Ko and Darin and Lisa Chestnut are neighbors and members of the Strandvik Homeowners Association. Strandvik is a dominant easement holder of a strip of land over Ko's property. The easement serves all Strandvik members. Ko installed a chain link fence and unlocked gate on the easement, and Darin[1] removed the fencing and gate. Ko sued the Chestnuts for trespass and Strandvik for violating its bylaws. The Chestnuts and Strandvik both moved for summary judgment, arguing the claims were untimely and meritless, and asked for sanctions. The trial court granted the summary judgment motions but did not award sanctions. Ko appeals summary judgment dismissal of his lawsuit. The Chestnuts and Strandvik cross appeal the denial of sanctions. We reverse summary judgment for the Chestnuts, affirm summary

---

[1] We refer to Darin Chestnut by his first name when necessary for clarity and mean no disrespect by doing so.

judgment for Strandvik, and affirm the trial court's denial of sanctions. We deny

attorney fees on appeal.

## FACTS

Ko and the Chestnuts own neighboring homes with direct access to Lake

Sammamish. Both properties are located within the Strandvik community. Ko

bought his property subject to a 1926 easement that Strandvik reserved for its

members. The easement provides:

> Saving and reserving from said description a strip of land ten
> (10) feet wide over and across the same, which strip is to be used
> for a walk or roadway, and the grantee, his heirs and assigns, shall
> have the right and privilege of using the same in common with
> others.

When Ko purchased the property (labeled "plaintiff's property" below) in

1997, the easement, or "disputed area," was paved and used as a driveway.



The Chestnuts bought their home in 2014. They used the driveway

easement adjoining the two properties to access their backyard because their

predecessor had installed a retaining wall along the west property line that

blocked any other backyard access from that side of their home. In mid-2015, Ko

asked Strandvik to agree to terminate the easement on his property, but

Strandvik declined. In response, Ko expressed his intent to erect a fence.

In May 2016, Darin was elected to serve on the board of directors. On August 17, 2016, Strandvik held a board of directors meeting at Strandvik president Karl Lindor's home to again discuss the easement and Ko's plans to install fencing.[2] Later that month, Ko installed a chain link fence on the easement. The fence ran along his eastern property line next to the Chestnuts and connected to a seven-foot-high gate across the entry to the paved easement.[3]



The Chestnuts asked Ko to remove the fence because it prevented them from accessing the easement from their property. Ko refused. Strandvik also told Ko to remove the fencing because it interfered with Strandvik members' rights to use the easement. Ko still refused.

In August 2017, the homeowners voted unanimously to remove Ko's fence. Darin volunteered to remove the fencing. Lindor authorized him to do so, provided the Chestnuts agreed to be responsible for any associated legal fees. On August 16, 2017, Darin and his construction crew removed Ko's fence and gate. They placed the fence materials in Ko's yard.

---

[2] The record does not show that the board members took any action at the meeting.

[3] While the gate could be closed and locked, Ko later claimed that it was always unlocked.

On October 20, 2017, Ko sued the Chestnuts, alleging trespass and seeking a declaratory judgment that the Chestnuts do not have a prescriptive easement over his land. The Chestnuts sued Strandvik as a third-party defendant, seeking an order and judgment quieting title to the disputed strip of land in favor of Strandvik.[4]

The Chestnuts moved for summary judgment and Strandvik joined their motion. The trial court granted partial summary judgment for the Chestnuts and Strandvik, quieting title to the easement in favor of Strandvik and its members "for ingress and egress from the northern edge of SE 40th Place over and across the Ko Property heading in a generally northerly direction to the shoreline of Lake Sammamish." Further, the court determined that the easement "immediately borders the west boundary of the Chestnut property and the Chestnuts[ ] and their successors and assigns may freely pass to and from the Road and Walkway Easement from any portion of the Chestnut Property." The trial court did not rule on Ko's trespass claims.

Ko appealed the court's summary judgment ruling. While Ko's appeal was pending, the parties entered a stipulation and agreed order to dismiss without prejudice all remaining claims. They also agreed that "any associated statutes of limitation in regards to the pending claims and causes of action shall be tolled subject to the above-referenced appeal and the tolling shall cease upon the completion of the appeal."

---

[4] The Chestnuts also sought a declaratory judgment that Strandvik must keep the easement area free from any blockage.

A commissioner from our court treated Ko's notice of appeal as a motion for discretionary review and issued a ruling denying the motion on December 16, 2019. We then issued a certificate of finality certifying that the ruling became final on February 28, 2020.

On November 4, 2022, Ko filed another lawsuit against the Chestnuts and Strandvik.[5] He alleged the Chestnuts committed common law and statutory trespass. And he sought a declaratory judgment that Strandvik held a special meeting to discuss the easement on August 17, 2016 in violation of its bylaws, depriving him of his due process rights.

Strandvik answered the complaint, generally denying the allegations and asserting that Ko's claims were untimely. The Chestnuts also answered, asserting that Ko's claims were barred by the statute of limitations and that an express easement exists, giving them legal access to the walkway on Ko's property.

In August 2023, the Chestnuts moved for summary judgment and CR 11 sanctions. They argued that the statute of limitations barred Ko's claims for common law and statutory trespass and that, in any event, the claims failed on their merits because the Chestnuts had lawful access to Strandvik's easement as Strandvik members. And they asked for CR 11 sanctions, arguing Ko's lawsuit was baseless. Ko responded, focusing on the August 16, 2017 fence removal as the event amounting to trespass and arguing he timely filed his lawsuit following the February 28, 2020 certificate of finality.

---

[5] Ko filed his complaint as trustee for the Andrew Ko Living Trust.

Strandvik also moved for summary judgment, arguing no evidence supported the claim that Strandvik violated its bylaws and, even so, no "justiciable controversy" existed.[6] In support of its motion, Strandvik submitted a declaration from Lindor explaining that while Darin called for a "special meeting" in August 2016 to discuss the easement, the board instead decided to hold a board of directors meeting. And Lindor attested that Strandvik held the meeting in compliance with its bylaws.

Ko responded to Strandvik's motion[7] but filed no declaration in support of his opposition. And he argued for the first time that Strandvik's August 2016 meeting also violated RCW 64.38.035(4) because the statute requires an affirmative vote "in an open meeting to assemble in closed session." Alternatively, Ko moved to amend his complaint "to add additional claims."

The trial court denied Ko's motion to amend his complaint, granted Strandvik's summary judgment motion, and dismissed Ko's claims against Strandvik with prejudice. Strandvik moved for CR 11 sanctions and attorney fees under RCW 4.84.185, which the trial court denied.

Later, the trial court granted the Chestnuts' summary judgment motion, finding Ko did not timely file his lawsuit within the statute of limitations and could not prove common law or statutory trespass. The court denied the Chestnuts' motion for CR 11 sanctions.

---

[6] Strandvik also argued that Ko's due process claim failed because there was no state action.

[7] Ko responded on September 12, 2023, 10 days before the summary judgment hearing, which Strandvik argued was untimely under CR 56(c) and (e) and entitled Strandvik to summary judgment in its favor. But the trial court heard oral argument and decided the motion on its merits.

Ko appeals.  Strandvik and the Chestnuts cross appeal.

ANALYSIS

Ko argues the trial court erred by granting summary judgment for the Chestnuts and Strandvik.  The Chestnuts and Strandvik cross appeal, arguing the court erred by denying their motions for sanctions.  Each party requests attorney fees and costs on appeal.

1.  Summary Judgment

We review de novo an order granting summary judgment.  *Ofuasia v. Smurr*, 198 Wn. App. 133, 141, 392 P.3d 1148 (2017).

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  CR 56(c); *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 182, 401 P.3d 468 (2017).  The moving party "has the initial burden to show there is no genuine issue of material fact." *Zonnebloem*, 200 Wn. App. at 183.  A moving defendant can satisfy this burden by establishing there is a lack of evidence to support the plaintiff's claims.  *Id.*  Once the defendant makes that showing, the burden shifts to the plaintiff to show that evidence supports each element of its claims.  *Id.*

We examine the record in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor.  *Landstar Inway Inc. v. Samrow*, 181 Wn. App. 109, 120, 325 P.3d 327 (2014).  Summary judgment is proper "only if reasonable minds could reach but one conclusion from the evidence presented."  *Ofuasia*, 198 Wn. App. at 141.

A.  Summary Judgment for the Chestnuts

Ko argues the trial court erred by granting summary judgment for the Chestnuts.  We agree.

I.  Timeliness

As an initial matter, the Chestnuts argue Ko's trespass claims are barred by the three-year statute of limitations under RCW 4.16.080(1).[8]  We disagree.

Ko alleges that Darin trespassed on August 16, 2017 when he removed the chain link fence and gate.  So, Ko had three years, or 1,095 days, from that date to file his lawsuit.  Ko filed his first lawsuit on October 20, 2017, 65 days after the statute began to run.  The parties then agreed to dismiss Ko's lawsuit without prejudice and toll the statute of limitations until "the completion of the appeal."  We determined in the certificate of finality that Ko's appeal became final on February 28, 2020.  So, Ko had 1,030 days to refile his claims, which was December 24, 2022.  Ko refiled his claims on November 4, 2022, 50 days before the statute of limitations expired.

The Chestnuts argue Ko's lawsuit is untimely because the commissioner's December 16, 2019 ruling triggered the statute of limitations to run again, making the filing deadline October 11, 2022.  So, according to the Chestnuts, Ko refiled his claims more than 20 days late.  But Ko's appeal was not complete when the commissioner issued her ruling.  Generally, we do not lose the power to change or modify our decisions until the issuance of a certificate of finality.  *See* RAP

---

[8] Under RCW 4.16.080(1), an action alleging trespass on real property "shall be commenced within three years."

12.7(a)(3). And the certificate of finality established February 28, 2020 as the date Ko's appeal became final.

Ko's trespass claims are timely.

## II. Trespass Claims

Ko argues the trial court erred by determining as a matter of law that Darin did not trespass when he entered Ko's property to remove his fencing. The Chestnuts argue Ko cannot show trespass because Darin was lawfully on Ko's property as a beneficiary of Strandvik's easement. Because reasonable minds could differ about whether Darin was lawfully on Ko's property when he removed the fencing, we agree with Ko.

A party commits trespass if they intentionally intrude onto another's property. *Olympic Pipe Line Co. v. Thoeny*, 124 Wn. App. 381, 393, 101 P.3d 430 (2004). A plaintiff proves common law trespass by showing "(1) an invasion of property affecting an interest in exclusive possession; (2) an intentional act; (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest; and (4) actual and substantial damages." *Wallace v. Lewis County*, 134 Wn. App. 1, 15, 137 P.3d 101 (2006). And a party commits statutory trespass under RCW 4.24.630(1) if the party

> goes onto the land of another and . . . removes timber, crops, minerals, or other similar valuable property from the land, or wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvement to real estate on the land.

A person acts "wrongfully" under the statute if they intentionally and unreasonably commit the act while knowing, or having reason to know, that they lack authorization to do so. *Id.* Both common law trespass and statutory trespass

9

turn on whether the party had a lawful right to be on and use the other's property in the manner they did. *See Olympic Pipe Line*, 124 Wn. App. at 393; RCW 4.24.630(1).

Here, Ko established that Darin entered his property without his authorization and removed his chain link fencing and gate. And he claimed the removal caused him damages, as he paid $5,194.08 to install the fence and $2,600.00 for reinstallation. As a result, Ko provides some evidence supporting the elements of his trespass claims.

Still, the Chestnuts argue they are entitled to summary judgment because Darin entered Ko's property lawfully as a beneficiary of Strandvik's easement. But reasonable minds could differ about whether Darin's actions exceeded the scope of the easement.

"An easement is a property right separate from ownership that allows the use of another's land without compensation." *M.K.K.I., Inc. v. Krueger,* 135 Wn. App. 647, 654, 145 P.3d 411 (2006). Still, the property right has limitations—"[a] party is privileged to use another's land only to the extent expressly allowed by the easement." *Sanders v. City of Seattle*, 160 Wn.2d 198, 215, 156 P.3d 874 (2007). A party commits trespass on an easement "if he or she misuses, overburdens, or deviates from an existing easement." *Olympic Pipe Line*, 124 Wn. App. at 393. That is because a party may use the other's land only as much as the easement allows. *See Sanders*, 160 Wn.2d at 215.

Here, the 1926 easement granted Strandvik members the right to use the 10-foot-wide strip of land across Ko's property as "a walk or roadway."[9] But the evidence shows Darin entered the easement to remove Ko's fence, not to walk across his property. So, reasonable finders of fact could differ as to whether Darin exceeded the scope of the easement when he entered Ko's property to remove the fencing.

Even so, the Chestnuts contend they could lawfully enter Ko's property to remove the fence because it interfered with their access to the easement. They cite *Standing Rock Homeowners Ass'n v. Misich*, 106 Wn. App. 231, 23 P.3d 520 (2001), and *Littlefair v. Schulze*, 169 Wn. App. 659, 278 P.3d 218 (2012), in support of their argument. But those cases are inapt.

In *Standing Rock*, owners in a development called Ponderosa Pines had a road easement running through Standing Rock, an adjacent development. 106 Wn. App. at 235. James Misich owned property in Ponderosa Pines. *Id.* After incidents of trespass and vandalism, Standing Rock homeowners erected gates on the easement. *Id.* at 236. Later, Standing Rock alleged that Misich helped remove the gates and sued him for injunctive relief and trespass. *Id.* The trial court determined the gates were reasonable restraints on the easement and entered judgment against Misich. *Id.* at 237. Division Three of this court affirmed that the gates were reasonable burdens on the easement and upheld the trial

_____

[9] In its July 2019 order on summary judgment, the trial court interpreted the easement to also provide the Chestnuts access to and from their property. But the court made that determination after Darin removed the fence in 2017.

court's conclusion of law that Misich was liable under RCW 4.24.630(1) for statutory trespass for removing the gates. *Id.* at 242, 246-47.

The Chestnuts acknowledge that "the *Standing Rock* court upheld the damages for wrongfully removing the gates." But they suggest that if the court had instead determined the gates were improper, the gates would be "removable." Even if that were so, *Standing Rock* does not support the Chestnuts' argument that someone other than the court could determine that the gates were an unlawful obstruction and authorize removal.[10]

The Chestnuts' reliance on *Littlefair* is also misplaced. In that case, two property owners, Littlefair and Schulze, accessed their properties by an easement road. *Littlefair,* 169 Wn. App. at 662. When Schulze erected a fence on his property within the easement area, Littlefair sued, asking the trial court to order that Schulze remove the fence. *Id.* at 662-63. The court denied relief but Division Two of this court reversed. *Id.* at 663, 668. The Chestnuts again assert that this case shows "the law supports removal." But again, *Littlefair* does not give a party leave to determine the legality of an obstruction and remove it at will. To the contrary, the appellant there sought a determination by the court that the fence was an unreasonable restriction on the easement and asked for a court

---

[10] We note that RCW 7.40.030 provides injunctive relief to restrain the malicious erection of a structure "intended to spite, injure or annoy an adjoining proprietor." The Chestnuts sought a declaratory judgment that Ko's fence was removable under this statute. But they brought the claim after Darin removed Ko's fence.

order authorizing removal.[11]  *Id.* at 663.

Because reasonable finders of fact could differ about whether Darin exceeded the scope of the easement when he removed Ko's fencing and gate, the Chestnuts are not entitled to summary judgment.[12]

B.  Summary Judgment for Strandvik

Ko argues the trial court erred by granting summary judgment for Strandvik.  We disagree.

I.  Evidence of Bylaws Violation

Ko sought a declaratory judgment that Strandvik violated its bylaws on August 17, 2016 when it held "a special meeting without an order of the board or by written demand by at least ten (10) [Strandvik] members and [without] the requisite ten (10) days' written notice."

Article 2 of Strandvik's bylaws govern its procedures for holding special meetings.  Article 2 provides, in relevant part:

> Section 3     Special meetings of the corporation may be called and held on any part of Strandvik Unrecorded Plat at any time by order of the board of trustees, or shall be called and held whenever ten (10) members shall make application in writing to the board of trustees stating the object of the meeting.  The business

---

[11] The Chestnuts argue they had a right to remove the fence because it was "supported by a proper, unanimous vote of the [Strandvik] members."  But they cite no authority supporting that Strandvik could unilaterally make that decision.  And Strandvik seemed to acknowledge its own lack of authority when it told Darin he would be "responsible for any legal fees associated with the fence removal."  When "a party cites no authorities supporting its argument, we may assume that counsel searched diligently and found none."  *Carter v. Dep't of Soc. & Health Servs.*, 26 Wn. App. 2d 299, 317, 526 P.3d 874 (2023).

[12] Ko argues on appeal that we should grant summary judgment in his favor.  But Ko did not move for summary judgment below.  And, as discussed above, questions of fact remain about whether Ko's fence was a lawful obstruction on Strandvik's easement and whether Darin lawfully entered Ko's property to remove the fence.

transacted at such meetings shall be confined to the objects stated in the call.

Section 4     Notice of the time and place of each annual or special meeting shall be mailed to each member to his last known address at least ten (10) days before the date set for each meeting.

In support of its summary judgment motion, Strandvik submitted a declaration from Lindor acknowledging that Darin called for a "special meeting" to discuss the easement issues. But he explained that rather than hold a special meeting of the members, "we instead held a meeting of the board of directors." And Lindor pointed out that under article 3, section 5 of the bylaws, board meetings do not require an application, board order, or 10-day notice. Instead, that article provides that board meetings

may be held at such time and place as the board itself may elect, and may be called at any time by the president or by two (2) members of the board on such notice as may be deemed advisable by those calling the meeting.

Ko offered no evidence contradicting Lindor's declaration. As a result, Strandvik is entitled to summary judgment dismissal of that claim. *See Weatherbee v. Gustafson*, 64 Wn. App. 128, 131, 822 P.2d 1257 (1992) ("summary judgment is proper if the non-moving party . . . fails to establish any facts which would support an essential element of its claim").

Ko now asserts, as he first did in his opposition to summary judgment below, that Strandvik's August 17 meeting was unlawful under RCW 64.38.035. Subsection (4) of that statute provides, in relevant part:

[A]ll meetings of the board of directors shall be open for observation by all owners of record and their authorized agents. . . . Upon the affirmative vote in open meeting to assemble in closed session, the board of directors may convene in closed executive session to consider [certain matters]. . . . No motion, or other action adopted,

14

passed, or agreed to in closed session may become effective unless the board of directors, following the closed session, reconvenes in open meeting and votes in the open meeting on such motion, or other action which is reasonably identified.

But Ko did not allege a violation of RCW 64.38.035 in his complaint. And "[c]omplaints that fail to give the opposing party fair notice of the claim asserted are insufficient." *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 352, 144 P.3d 276 (2006); *see* CR 8(a).

In any event, Ko provides no evidence that the August 17 meeting violated RCW 64.38.035(4). In support of Ko's argument, he cites only to Lindor's declaration, which attests the meeting was a board meeting held at Lindor's home. It does not describe the meeting as a closed executive session. And Ko provides no evidence otherwise. Nor does Ko show that the board did not openly vote in compliance with the statute or that it took any action at the meeting that would violate the statute.[13]

The trial court properly granted summary judgment for Strandvik.

## II. Leave to Amend

Alternatively, Ko argues that the court should have granted leave to amend his complaint to "add additional causes of action." We disagree.

We review a trial court's denial of leave to amend a complaint for abuse of discretion. *Watson v. Emard*, 165 Wn. App. 691, 697, 267 P.3d 1048 (2011). A court abuses its discretion when it bases its decision on untenable grounds or

---

[13] Because we conclude there is no evidence that Strandvik violated its bylaws, we need not address Ko's claim that Strandvik's failure to comply with the bylaws deprived him of due process or Strandvik's argument that the statute of limitations barred Ko's new claim under RCW 64.38.035.

reasons. *Id.* at 697-98.

Under CR 15(a), a party may move to amend its pleading by leave of the court. When a party moves to amend, it "shall" attach a copy of the proposed amended pleading to the motion. *Id*; *see also Crown Cascade, Inc. v. O'Neal*, 100 Wn.2d 256, 261, 668 P.2d 585 (1983) (the word "shall" is presumptively imperative and creates a duty). On a proper motion, the trial court should freely grant leave to amend "when justice so requires." CR 15(a); *Watson*, 165 Wn. App. at 697. A court's failure to explain its reasons for denying leave to amend is not an abuse of discretion if the reasons "are apparent in light of circumstances shown in the record." *See Watson*, 165 Wn. App. at 698; *Rodriquez v. Loudeye Corp.*, 144 Wn. App. 709, 730, 189 P.3d 168 (2008) (we can "affirm without an explicit explanation for the denial [of leave to amend] in some circumstances").

While the court did not explain its reason for denying Ko's motion for leave to amend, we can readily discern the reason from the record. Ko failed to move to amend his complaint under CR 15(a) and, instead, requested leave to amend in his response to Strandvik's summary judgment motion. As part of that request, Ko failed to attach a copy of a proposed amended pleading. Both the opposing party and the court have a legitimate need to see the proposed amended pleading to assess issues of prejudice and futility. *See Hook v. Lincoln County Noxious Bd.*, 166 Wn. App. 145, 160, 269 P.3d 1056 (2012). So, "failure to provide the amended complaint required by CR 15(a) [is] a sufficient basis" to deny a motion to amend. *Id.*

The trial court did not abuse its discretion by denying Ko leave to amend his complaint.

2. <u>Sanctions</u>

The Chestnuts and Strandvik both cross appeal, arguing the trial court erred by denying their motions for sanctions. We disagree.

We review a trial court's decision to grant or deny sanctions for abuse of discretion. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338, 858 P.2d 1054 (1993). The sanction rules are meant to give the trial judge " 'wide latitude and discretion' " to determine the proper sanctions in a given case. *Id.* at 339 (quoting *Cooper v. Viking Ventures*, 53 Wn. App. 739, 742, 770 P.2d 659 (1989)).

The purpose of CR 11 sanctions is to deter baseless filings and to curb abuses of the judicial system. *Bryant v. Joseph Tree, Inc.,* 119 Wn.2d 210, 219, 829 P.2d 1099 (1992). A court can impose CR 11 sanctions when it finds both that the complaint lacks a factual or legal basis and that the attorney who filed the complaint failed to conduct a reasonable inquiry into the claim. *Id.* at 220. "If a sufficient factual and legal basis exists for the complaint, we do not reach the question of whether counsel made a reasonable investigation before filing." *Clare v. Telquist McMillen Clare PLLC*, 20 Wn. App. 2d 671, 686, 501 P.3d 167 (2021). And the fact that a party does not prevail on the merits of its complaint does not resolve whether CR 11 sanctions are warranted. *Bryant,* 119 Wn.2d at 220.

RCW 4.84.185 authorizes a trial court to award a prevailing party attorney fees for opposing a frivolous action. Before awarding fees under the statute, "the court must make written findings that the entire lawsuit is frivolous and advanced without reasonable cause." *Subcontracting Concepts CT, Inc. v. Manzi*, 26 Wn.

App. 2d 707, 717, 529 P.3d 440 (2023).  A lawsuit is frivolous when it cannot be supported by a rational argument on the law or facts.  *Stiles v. Kearney*, 168 Wn. App. 250, 260, 277 P.3d 9 (2012).

A.  <u>Denial of CR 11 Sanctions for the Chestnuts</u>

The Chestnuts argue the trial court abused its discretion by denying CR 11 sanctions because Ko's litigation is "baseless and vexatious," his counsel "failed to conduct a reasonably inquiry," and "Ko's continued abuse of the judicial system" warrants sanctions.  We disagree.

The trial court denied the Chestnuts' motion for CR 11 sanctions, finding they "are not warranted in this case" because the court should impose them "only when it is patently clear that a claim has absolutely no chance of success."  The record supports this ruling because the trespass issues Ko raised are debatable. Specifically, there is a material question about whether Darin trespassed by exceeding the scope of Strandvik's easement.

Because Ko's claims against the Chestnuts are not baseless, the court did not abuse its discretion by denying sanctions.  *See Bryant,* 119 Wn.2d at 220 (claims that are not " 'baseless' " are "not the proper subject of CR 11 sanctions").

B.  <u>Denial of Sanctions for Strandvik under CR 11 and RCW 4.84.185</u>

Strandvik argues that the court erred by denying its request for sanctions under CR 11 and attorney fees under RCW 4.84.185 because Ko's claims were baseless and frivolous.  Again, we disagree.

Ko sued Strandvik for violating its bylaws' special meeting requirements. Although his claim fails, it was tenable for the court to conclude that Ko's allegation was not baseless or frivolous.  For example, the record includes an e-

mail from Darin to Lindor requesting Strandvik hold a "special meeting." While Lindor later attested that Strandvik held a board meeting instead of a special meeting, Ko's original allegation was supported by a rational argument on the facts. So, the court's denial of sanctions was not an abuse of discretion. *See Stiles*, 168 Wn. App. at 263 ("CR 11 and RCW 4.84.185 sanctions are not mandatory" and "reasonable minds might differ on whether to exercise the discretion to impose sanctions in a particular case").

3. Attorney Fees and Costs on Appeal

Each party requests attorney fees on appeal. We deny each request.

A "prevailing party may recover attorney fees authorized by statute, equitable principles, or agreement between the parties." *Thompson v. Lennox*, 151 Wn. App. 479, 484, 212 P.3d 597 (2009). Generally, if those fees are allowable at trial, the prevailing party may also recover fees on appeal. *Id.*; *see also* RAP 18.1(a) (we may award attorney fees on appeal if "applicable law grants to a party the right to recover reasonable attorney fees").

Ko requests attorney fees under RCW 4.24.630(1) (the trespass statute) and RCW 64.38.050 (the statute governing homeowners' associations). Under RCW 4.24.630(1), a party found liable of statutory trespass is also "liable for reimbursing the injured party for the party's reasonable costs, including . . . reasonable attorneys' fees." Because the Chestnuts have not been found liable of statutory trespass, Ko is not entitled to attorney fees under the statute. He also is not entitled to fees under RCW 64.38.050 because he failed to bring a claim under chapter 64.38 RCW.

The Chestnuts request attorney fees but fail to cite an applicable law granting them the right to recover fees on appeal. *See* RAP 18.1(a), (b). So, we deny the request.

Strandvik requests attorney fees under RCW 64.38.050 or CR 11. RCW 64.38.050 provides that for any "violation of the provisions of this chapter," the court may award reasonable attorney fees to the prevailing party. But Strandvik successfully argued that Ko brought no claim under chapter 64.38 RCW, so Strandvik could not have prevailed on any such claim. As for CR 11 sanctions on appeal, Strandvik does not "devote a section of its opening brief" to this request. *See* RAP 18.1(b). So, we deny Strandvik's requests for attorney fees.

We reverse summary judgment for the Chestnuts but affirm summary judgment for Strandvik and affirm the trial court's denial of sanctions. And we deny all parties' requests for attorney fees on appeal.

_____, ACJ

WE CONCUR:

_____          _____
Díaz, J.                                      Birk, J.